THE STATE OF OHIO, APPELLEE, *v.* ROGERS, APPELLANT.

[Cite as State *v.* Rogers (1986), 28 Ohio St. 3d 427.]

(No. 84-784—Decided December 30, 1986.)

Anthony G. *Pizza,* prosecuting attorney, *James D. Bates* and *James E. Yavorcik,* for appellee.

*John J. Callahan, Ralph DeNune III* and *Douglas A. Wilkins,* for appellant.

*Randall M. Dana, David C. Stebbins* and *Randall L. Porter* for *amicus curiae,* Ohio Public Defender Commission.

HOLMES, J. In *Caldwell* v. *Mississippi, supra,* the United States Supreme Court held that a death sentence is invalid "when the sentencing jury is led to believe that responsibility for determining the appropriateness of a death sentence rests not with the jury but with the appellate court which later reviews the case." *Caldwell, supra,* at 323. It is clear that the Mississippi jury was statutorily obligated to determine whether a defendant "should be sentenced to death," or to life imprisonment. Miss. Code Annot. Section 99-19-101.

In response to the defense counsel's assertions, the prosecution in *Caldwell* stated during closing argument:

" '* * * I'm in complete disagreement with the approach the defense has taken. I don't think it's fair. I think it's unfair. I think the lawyers know better. Now, they would have you believe that you're going to kill this man and they know — they know that your decision is not the final decision. My God, how unfair can you be? Your job is reviewable. They know it. * * * [T]he decision you render is automatically reviewable by the Supreme Court. Automatically, and I think it's unfair and I don't mind telling them so.' " *Id.* at 325-326.

Upon appeal, the Mississippi Supreme Court narrowly upheld the above closing argument.

In reversing, the United States Supreme Court noted that the prosecutor's remarks provided the jurors with "an invitation to rely on * * * [appellate] review" which would "generate a bias toward returning a death sentence," and which "presents an intolerable danger that the jury will in fact choose to minimize the importance of its role." *Caldwell, supra,* at 231. Also, the court found the statutory framework of appellate review insufficient to correct the complained-of error. The court noted that:

" 'Even a novice attorney knows that appellate courts do not impose a death penalty, they merely review the jury's decision and that review is with a presumption of correctness.' " *Id.* at 331, quoting *Caldwell* v. *State*

(Miss. 1983), 443 So. 2d 806, at 816 (Lee, J., dissenting), and citing Miss. Code Annot. Section 99-19-105 (Supp. 1984). Consequently, the prosecution's argument undermined the Eighth Amendment guarantee of a reliable determination of the appropriateness of death as punishment in particular cases. *Id.* at 323, citing *Woodson* v. *North Carolina* (1976), 428 U.S. 280.

Upon review of Ohio's statutory framework and the circumstances of this case, it must be concluded that none of the above dangers expressed in *Caldwell* threatened the integrity of the sentencing authority of the case *sub judice.*

At the outset of the within analysis, it should be stated that Ohio's statutory framework for the imposition of the death penalty is altogether different from that of Mississippi, most importantly in that Ohio has no "sentencing jury." All power to impose the punishment of death resides in the trial court which oversees the mitigation or penalty phase of the trial. The duty of the trial judge is set forth in R.C. 2929.03(D)(3).[1]

Immediately obvious is that, under this provision, the jury provides only a *recommendation* as to the imposition of the death penalty. The trial court must thereafter independently re-weigh the aggravating circumstances against the mitigating factors and issue a formal opinion stating its specific findings, before it may impose the death penalty. R.C. 2929.03(F). It is the trial court, not the jury, which performs the function of sentencing authority. Thus, no "sentencing jury" was involved in the proceedings below. Furthermore, as actual sentencer, the trial court was "present to hear the evidence and arguments and see the witnesses" and was in a position to fully appreciate a plea for mercy. *Caldwell, supra,* at 331.

Furthermore, Ohio's sentencing procedures are not unique both because a separate sentencing hearing is utilized, and because capital sentencing authority is invested in the trial judge. See, *e.g.,* Ala. Code Subsection 13A-5-47 (1986 Supp.) (judge is not bound by jury's advisory verdict); Ariz. Rev. Stat. Annot. Section 13-703(B), (C) and (D) (1986 Supp.) (jury is

---

[1] R.C. 2929.03(D)(3) states as follows:

"Upon consideration of the relevant evidence raised at trial, the testimony, other evidence, statement of the offender, arguments of counsel, and, if applicable, the reports submitted to the court pursuant to division (D)(1) of this section, if, after receiving pursuant to division (D)(2) of this section the trial jury's recommendation that the sentence of death be imposed, the court finds, by proof beyond a reasonable doubt, or if the panel of three judges unanimously finds, that the aggravating circumstances the offender was found guilty of committing outweigh the mitigating factors, it shall impose sentence of death on the offender. Absent such a finding by the court or panel, the court or the panel shall impose one of the following sentences on the offender:

"(a) Life imprisonment with parole eligibility after serving twenty full years of imprisonment;

"(b) Life imprisonment with parole eligibility after serving thirty full years of imprisonment."

completely excluded from sentencing); Colo. Rev. Stat. Section 16-11-103 (2)(C) (1985 Supp.) (trial judge may vacate a jury finding if clearly erroneous); Fla. Stat. Section 921.141(2) (1982 Cum. Supp.) (trial court independently re-weighs aggravating versus mitigating circumstances after an advisory jury verdict); Idaho Code Section 19-2515(d) (1986 Supp.) (trial court alone sentences and conducts a mitigation hearing), etc.

Florida's statutory system, which is remarkably similar to Ohio's, was expressly upheld in the case of *Spaziano* v. *Florida* (1984), 468 U.S. 447. Justice Blackmun, writing for the court, concluded:

"If a judge may be vested with sole responsibility for imposing the [death] penalty, then there is nothing constitutionally wrong with the judge's exercising that responsibility after receiving the advice of the jury. The advice does not become a judgment simply because it comes from the jury." *Id.* at 465.

Recently, the United States Court of Appeals for the Eleventh Circuit issued its decision in *Adams* v. *Wainwright* (C.A. 11, 1986), 804 F.2d 1526. That panel reversed a Florida death sentence because it felt that the trial court's instructions violated the spirit of the *Caldwell* decision. We need not consider the broad reading of *Caldwell* set forth therein since the case before us differs in several significant respects. Neither the trial court in the present case nor the prosecutor invited the jury to rely upon later judgments. Instead, merely correct legal statements were made. Furthermore, under Ohio's framework, the trial court is not a simple "buffer where the jury allows emotion to override the duty of a deliberate determination," *Cooper* v. *State* (Fla. 1976), 336 So. 2d 1133, 1140, certiorari denied (1977), 431 U.S. 925, but is the authority in whom resides the sole power to initially impose the death penalty. Finally, to hold that "the jury's sense of responsibility for its advisory sentence was diminished," *Adams, supra,* at 5, for the single reason that the trial court informed the jury that their verdict was a mere recommendation, creates an unacceptable dilemma. Either the relevant portions of Ohio's statutory framework for imposition of the death penalty must be ruled unconstitutional or any juror who at any time has learned the legal nature of the jury's finding must be considered hopelessly prejudiced. This court cannot accept either proposition based on *Caldwell.*

Thus, the Sixth Amendment provides no right to a jury determination of the punishment to be imposed; nor does the Ohio system impugn the Eighth Amendment. *Spaziano, supra,* at 464. See, also, *State* v. *Buell* (1986), 22 Ohio St. 3d 124, 142-144, and *State* v. *Williams* (1986), 23 Ohio St. 3d 16, 21-22.

Consequently, the trial court's instructions as well as the jury verdict forms,[2] based as they were upon the very wording of a constitutional statutory sentencing procedure, merely gave "the jury accurate informa-

---

[2] Appellant contends that the record in the present case reveals that the conduct of the prosecution and the trial court throughout the penalty phase of the trial was of such

tion of which both the defendant and his counsel * * * [were] aware." *California* v. *Ramos* (1983), 463 U.S. 992, 1004.

Also, the record before us differs from that of *Caldwell* in that neither the prosecution nor the trial court made mention of the appellate process or thereby sought to allow the jurors to minimize their role through dependence upon such process. Nevertheless, another important distinction from *Caldwell* is that the Ohio appellate courts are statutorily obligated to do much more than "merely review the jury's decision * * * with a presumption of correctness." R.C. 2929.05[3] provides that the intermediate courts of appeals and the Supreme Court of Ohio must each

---

character as to deprive appellant of a fair trial under authority of *Caldwell* v. *Mississippi, supra.* The specific conduct complained of began with the *voir dire* of prospective jurors at which time the possible penalty phase finding was referred to as a mere *recommendation* to the trial judge. Apparently, both the prosecution and the defense utilized "recommendation"-based questions in determining the views of potential jurors.

Also, in its final instructions, the trial court stated:

"If all twelve members of the jury find by proof beyond a reasonable doubt that the aggravating circumstances which Billy Rogers was found guilty of committing outweigh the mitigating factors, then you must return such finding to the court. I instruct you as a matter of law that if you make such a finding then you have no choice and must *recommend* to the court that the sentence of death be imposed upon the defendant, Billy Rogers.

"A jury *recommendation* to the court that the death penalty be imposed is just that, a *recommendation,* and is not binding upon the court. The final decision as to whether the death penalty shall be imposed upon the defendant rests upon this court. In the final analysis, after following the procedures and applying the criteria set forth in the statute, I will make the decision as to whether the defendant, Billy Rogers, will be sentenced to death or to life imprisonment." (Emphasis added.)

Finally, the verdict forms given to the jury recited in part as follows:

"We, the jury *recommend* that the Sentence of Death be imposed on the defendant, BILLY ROGERS."

"We, the jury *recommend* that the defendant, BILLY ROGERS, be sentenced to Life Imprisonment with parole eligibility after serving [twenty or thirty] full years of imprisonment." (Emphasis added.)

[3] R.C. 2929.05(A) states in pertinent part:

"* * * The court of appeals and the supreme court shall review the judgment in the case and the sentence of death imposed by the court or panel of three judges in the same manner that they review other criminal cases, except that they shall review and independently weigh all of the facts and other evidence disclosed in the record in the case and consider the offense and the offender to determine whether the aggravating circumstances the offender was found guilty of committing outweigh the mitigating factors in the case, and whether the sentence of death is appropriate. In determining whether the sentence of death is appropriate, the court of appeals and the supreme court shall consider whether the sentence is excessive or disproportionate to the penalty imposed in similar cases. They shall also review all of the facts and other evidence to determine if the evidence supports the finding of the aggravating circumstances the trial jury or the panel of three judges found the offender guilty of committing, and shall determine whether the sentencing court properly weighed the aggravating circumstances the offender was found guilty of committing and the mitigating factors. The court of appeals or the supreme court shall affirm a sentence of death only if the particular court is persuaded from the record that the aggravating circumstances the offender was found guilty of committing outweigh the mitigating factors present in the case and that the sentence of death is the appropriate sentence in the case."

weigh the mitigating factors against the aggravating circumstances; evaluate whether the sentence of death is appropriate, excessive, or disproportionate; and review again the aggravating circumstances and whether the trial court properly weighed them against the mitigating factors.

Such thorough review provides every opportunity and authority for a reviewing court to make an original determination, to independently weigh not only those factors weighed by the jury but also to determine whether the sentence was appropriate. This grant of wide latitude *requires* Ohio's appellate courts to function as much more than mere reviewers of jury findings. See, also, *State* v. *Glenn* (1986), 28 Ohio St. 3d 451, 462-463. Indeed, Ohio requires that appellate courts must perform a proportionality analysis, which goes beyond constitutional requirements. *Pulley* v. *Harris* (1984), 465 U.S. 37. It therefore becomes clear that Ohio's statutory, multistepped sentencing process does not deprive the capital offender of a sensitive sentencer and then place him at the mercy of the normal appellate review system.

Turning now to the prosecutor's rebuttal comments,[4] it is observed that these, too, were mere accurate statements of the law. Further, his few observations on the nature of the jury's finding fall far short of the kind of provocations to error found in *Caldwell, supra*. The prosecution in the present case neither invited erroneous reliance on an appellate overview, nor provided false assurances that the jury may more "freely 'err because the error may be corrected on appeal.' * * * " *Caldwell, supra*, at 331, quoting *Maggio* v. *Williams* (1983), 464 U.S. 46, 54-55 (Stevens, J., concurring). The prosecutor made no reference to any appellate court or to the Supreme Court of Ohio. No comment was made about automatic appellate review of death sentences. Consequently, the prosecution did not create a "chance that an invitation to rely on that review will generate a bias toward returning a death sentence." *Caldwell, supra*, at 333. As he concluded his argument, the prosecution analyzed the balancing process required of the jurors.[5] Again, his use of the term "recommend" was in-

---

[4] During final arguments in the penalty phase, appellant's counsel made several arguments concerning the death penalty and the jury's role for that part of the proceedings. During rebuttal, the prosecution commented as follows:

"Mr. Callahan put some even greater obligations on you. He doesn't say to you that it's your *recommendation* to the Court. He says that you, ladies and gentlemen, decide *whether to kill* Billy Rogers.

"You ladies and gentlemen, as we discussed with you in the voir dire, decide a *recommendation* to the Court. The Court must agree or disagree with your finding." (Emphasis added.)

[5] He stated:

"If you don't [find a mitigating factor], your *recommendation* to the Court must be the death penalty. If you do [find a mitigating factor], you have to weigh this, and if the aggravating factors, that being the intentional killing in the commission of the rape and the commission of the kidnapping, if that outweighs, then you must *recommend* the death penalty." (Emphasis added.)

cidental to and merely part of the recitation of his views on the statutory requirements. He could hardly be expected to falsely inform the jurors of what act they must do should their findings be of a particular kind. This he would have risked had he used a different word to describe their actions.

This court has never held that prosecutors are "free to expose capital sentencing juries to any information and argument concerning postsentencing procedures." *Caldwell, supra,* at 335. Although the Ohio jury is not a "capital sentencing" jury because it cannot impose the death penalty, nevertheless this court has demonstrated an appreciation of the fact that some degree of unreliability in jury findings may be occasioned by arguments based on postsentencing procedures. We have repeatedly stated that "because of the possible risk of diminishing jury responsibility, '* * * we prefer that in the future no reference be made to the jury regarding the finality of their decision * * *.' " *State* v. *Williams, supra,* at 22, quoting *State* v. *Jenkins* (1984), 15 Ohio St. 3d 164, 202-203, certiorari denied (1985), 473 U.S. ___, 87 L. Ed. 2d 643. In so stating, we reserved power to evaluate such references in the context of the record to determine the impact of such statements and whether defense counsel, by its statements, created a reasonable basis for a response from the prosecution.

In the case here, the prosecution's single argumentative reference to the jury's "recommendation" was made expressly in response to defense counsel's remarks. In his comments on the death penalty, defense counsel stated that: "[A]lmost nothing [is written] to indicate the death penalty is a deterrent. * * * In the 30 years that I have been representing people in murder cases, rarely has the * * * man or woman expressed any thought of what the penalty might be, at the time of the crime."

After asserting that appellant did not act like a normal human being, counsel stated: "Do we kill a man like this? Because that's what you're being asked to do." Counsel later challenged the jury with the following: " '* * * [W]e knew it would come to this point ultimately, are you going to kill Billy Rogers today or are you going to place him in an institution for the rest of his life?" Appellant also described the jury's duty under the statute: "The mitigating circumstances—or the aggravating circumstances, rather, in order for you to impose the death penalty must outweigh the mitigating circumstances. Even if they are equal, * * * you cannot impose the death penalty." As part of his conclusion, counsel quoted: " 'Though the justice of God may indeed ordain that some should die, the justice of man is all together [*sic*] and always insufficient for saying who these may be.' "

In a strongly worded argument, defense counsel confronted the jurors with the following statements:

"Is it justice, is it even seeking after justice to try to put Billy Rogers out of his miserable life some months hence? I submit to you, ladies and gentlemen, that life is something that this courtroom should not have

anything to do with. Life is God-given. It doesn't come from the state of Ohio. It should not be a punishment to take a man's life away from him. It goes back to barbarism. I hope that some day we will consider death penalty trials as barbarous as we consider the burning of Joan of Arc at the stake. And with the evolving decency, the evolving humanity of people like yourself, perhaps that day will come soon."

To assert that the jurors are going to *kill* the appellant is not only an inaccurate statement of the law of Ohio, it is a brash, if not inappropriate, argument as utilized by appellant's counsel. Defense counsel certainly has the right to plead for mercy and, indeed, has the very duty to cause the jury to "confront both the gravity and the responsibility of calling for another's death." *Caldwell, supra,* at 324. However, such does not create a license for counsel to cross over into the area where, as here, an attempt was made to create an improper sense of guilt in the jury, and to direct this guilt into a finding in appellant's favor.

Furthermore, portions of defense counsel's argument were not directed to the jurors' responsibility to feel the gravity of their decision, but were undisguised attacks on the merits of capital punishment itself. This issue has been legislatively determined and is not a subject for argument or comment.

While the prosecutor's commentary in *Caldwell* was an unacceptable response to defense counsel's arguments because it "distorted the jury's deliberations," *id.* at 336, it can be concluded that the prosecutor in the case *sub judice* was not unreasonable in his determination not to allow these inaccurate representations to remain unchallenged. It is because of the circumstances contained in the record before us that this court has refused to adopt a *per se* rule concerning comments directed at the jury's role in the mitigation phase of a capital case. Where, as here, the prosecutor's remarks were restrained in emphasis and contained a brief corrective comment on the jury's role, and only contained a basic recitation of the law, it cannot be said that error or distortion entered into the jurors' deliberations.

In an order dated April 2, 1986, this court granted appellant's motion to expand the scope of review. Appellant's motion set forth a need to "raise the question in the state court" of whether the prosecution's comments and questions about the acts of appellant after he was advised of his *Miranda* rights were in violation of *Wainwright* v. *Greenfield* (1986), 474 U.S. ____, 88 L. Ed. 2d 623. Appellant cited *State* v. *Buell, supra,* as authority to "include consideration of a recently decided constitutional issue not argued by an appellant * * *. This case is in the identical posture with respect to the *Greenfield* issue that *Buell* was with respect to the *Caldwell* issue." Appellant's motion, page 7.

After examining the record in the present case, it becomes apparent that appellant does not stand in the asserted "identical posture" as the appellant in *Buell*. Although appellant did fail to object at the trial level, it

appeared to be a conscious result of his own decision to initially broach the subjects now asserted to have been erroneously broached. However, the issue was firmly raised before the Court of Appeals for Lucas County in appellant's proposition of law number twenty-six. That court determined that any posssible error was self-induced.

On direct appeal to this court, appellant abandoned this argument. By failing to challenge the ruling of the court of appeals on direct appeal to this court, appellant has acquiesced in the previous ruling. Accordingly, Ohio's doctrine of *res judicata* has foreclosed consideration of such issue at this time. *State* v. *Roberts* (1982), 1 Ohio St. 3d 36.

Having reconsidered the issues presented on remand from the Supreme Court of the United States, in light of *Caldwell* v. *Mississippi, supra,* we hereby reaffirm our previous decision in this case for the reasons stated hereinabove.

*Judgment reaffirmed.*

CELEBREZZE, C.J., SWEENEY and LOCHER, JJ., concur.

C. BROWN, REILLY and WRIGHT, JJ., dissent.

REILLY, J., of the Tenth Appellate District, sitting for DOUGLAS, J.

CELEBREZZE, C.J., concurring. I concur in the majority's determination that the holding in *Caldwell* v. *Mississippi* (1985), 472 U.S. 320, does not require reversal of appellant's death sentence. Our decision today is consistent with past pronouncements and is in harmony with the analysis of this issue found in my opinion in *State* v. *Williams* (1986), 23 Ohio St. 3d 16, 29-31 (Celebrezze, C.J., concurring).

Additionally, I write briefly in regard to some of the seemingly sweeping assertions in the majority opinion concerning the propriety of remarks by appellant's counsel in closing argument of the penalty phase of this trial. Justice Sweeney correctly observes in his concurring opinion, *infra,* that this court need only have held that to the extent counsel misstated the applicable law, the remarks were improper. As the majority itself states, there should otherwise be no *per se* rule concerning comments to the jury by the prosecution or defense counsel in the penalty phase of a capital trial.[6] Although the trial judge is usually in the best position to issue curative instructions, I agree that the prosecutor's remarks in the case *sub judice* were proper and restrained corrective statements in response to defense counsel's erroneous assertion that the jurors were going to kill appellant. However, as a *caveat,* it should be remembered that such respon-

___

[6] The majority's attempt to limit the scope of defense counsel's comments in future proceedings is contradictory to its own pronouncement against such *per se* rules.

sive comments are risky because *improper* prosecutorial argument will not always be excused under the doctrine of invited response.[7] *Caldwell, supra,* at 336-337; *United States* v. *Young* (1985), 470 U.S. 1, 11-14.

Finally, appellant also asked this court to determine whether he was deprived of a fair trial by the state's use of his post-*Miranda* silence as evidence of his sanity. The United States Supreme Court has recently addressed such a question in *Wainwright* v. *Greenfield* (1986), 474 U.S. ____, 88 L. Ed. 2d 623. Thereafter, we granted a motion to expand the scope of review in this cause during rehearing to include consideration of appellant's contention that the state's conduct ran afoul of the *Greenfield* decision. In my view, it may have been wiser for the majority to have reached the merits. Hopefully appellant will move for rehearing before this court so that the merits of this question can be resolved. If left unresolved in this state's courts, appellant's recourse, *inter alia,* is to again petition the United States Supreme Court for a writ of certiorari.

SWEENEY, J., concurring. I concur separately to emphasize that today's decision should not be interpreted as limiting, as a matter of law, the scope of defense counsel's argument. While it is necessary for the majority opinion to address the content of defense counsel's argument, because it was the basis for permitting the prosecution to "make a brief, corrective statement," I do not believe it is necessary to label defense counsel's argument as "brash," "inappropriate," or "an attempt * * * to create an improper sense of guilt in the jury. * * *" The prosecution did not object to the argument in question, nor did the trial court, which is in the best position to determine whether an argument is prejudicial, attempt to restrain the defense counsel.

Further, I do not believe that the issue of capital punishment should never be a "subject for argument or comment" by defense counsel, simply because the issue previously has been "legislatively determined." Arguments concerning the propriety or constitutionality of capital punishment cannot be limited by this court as a matter of law, and such arguments may be, at times, essential to the conduct of a vigorous defense.

Defense counsel's argument herein was misleading in that it misstated the jury's role in the penalty phase of the defendant's trial. As such, it formed the basis for the prosecution's "corrective statement," which "contained a basic recitation of the law." The prosecutor's argument thus

---

[7] For example, in *Caldwell, supra,* the prosecutor's erroneous and improper invited response resulted in vacation of the death sentence. The majority quoted with approval the opinion of the dissenting state supreme court justices below:

" 'Assuming without accepting the majority's position that the defense counsel's argument invited error, it did not invite this error. Asking the jury to show mercy does not invite comment on the system of appellate review. This is true whether the plea for mercy discusses Christian, Judean or Buddhist philosophies, quotes Shakespeare or refers to the heartache suffered by the accused's mother.' " *Caldwell, supra,* at 337.

was proper and, in reaching this conclusion, we need not determine at this level that defense counsel's previous argument was inappropriate or improper.

CELEBREZZE, C.J., concurs in the foregoing concurring opinion.

CLIFFORD F. BROWN, J., dissenting. Because I believe that *Caldwell* v. *Mississippi* (1985), 472 U.S. 320, requires that appellant's sentence of death be reversed and remanded for resentencing, I dissent.

As explained in Justice Wright's cogent dissenting opinion in *State* v. *Williams* (1986), 23 Ohio St. 3d 16, 32-35, "* * * [t]he *Caldwell* court appears to hold that an instruction that is misleading in the sense that it diminishes the jury's sense of responsibility constitutes reversible error. * * * State-induced suggestions that the sentencing jury may shift its sense of responsibility for the imposition of the death penalty create a risk of substantial unreliability as well as potential bias in favor of death sentences.* * *" *Id.* at 34.

An instruction substantially similar to the one at bar formed the basis for reversing the denial of a writ of habeas corpus for a defendant who had received the death penalty in the recent case of *Adams* v. *Wainwright* (C.A. 11, 1986), 804 F. 2d 1526. There, the trial judge instructed the initial panel of prospective jurors that their role in determining whether the defendant received the death penalty was only advisory, and that the ultimate responsibility rested with him as the trial judge. In holding that these comments impermissibly diminished the jury's sense of responsibility in violation of *Caldwell,* the circuit court reiterated the concern of the *Caldwell* court that a bias in favor of the death penalty is thereby created such that a jury, unconvinced that the death penalty is appropriate, might nevertheless impose it as an expression of outrage at the defendant's crime, secure in the comforting belief that any error will eventually be corrected.

A jury, understandably intimidated by the responsibility of deciding whether a human being shall live or die, will clutch at any comment from an authoritative source tending to relieve them of their terrible burden, and as a result, may discharge their grave responsibility with less than complete conscientiousness. *Caldwell, supra,* at 323-333. Such an effect cannot be tolerated.

Accordingly, I dissent to the majority's reaffirmance of defendant's sentence of death. I would vacate defendant's death penalty and remand for resentencing.

REILLY and WRIGHT, JJ., concur in the foregoing dissenting opinion.