THE STATE OF OHIO, APPELLEE, *v.* POINDEXTER, APPELLANT.

[Cite as State *v.* Poindexter (1988), 36 Ohio St. 3d 1.]

(No. 87-243—Decided March 23, 1988.)

1

*Arthur M. Ney, Jr.,* prosecuting attorney, *Christian J. Schaefer, John D. Valentine* and *Patrick Dinkelacker,* for appellee.

*Dominic F. Perrino, Peter Pandilidis* and *H. Fred Hoefle,* for appellant.

DOUGLAS, J. This appeal presents this court with numerous issues concerning appellant's convictions and the penalty of death which was subsequently imposed. For the reasons discussed *infra,* we affirm the judgment of the court of appeals in all respects and uphold appellant's death sentence.

Initially, it should be noted that although R.C. Chapter 2929 requires this court to review capital cases in a certain manner, that chapter does not mandate that this court address and discuss, in opinion form, each and every proposition of law raised by the parties. While we recognize that certain issues of law must be raised to preserve a party's right of appeal in federal court, we will not reconsider and discuss such issues at length in each case. We, therefore, hold that when issues of law in capital cases have been considered and decided by this court and are raised anew in a subsequent capital case, it is proper to summarily dispose of such issues in the subsequent case.

Appellant's first two propositions of law challenge the trial court's instruction to the jury that its recommendation of death would not be binding on the court, and that the final responsibility for the imposition of the death penalty rested with the court. Appellant cites *Caldwell* v. *Mississippi* (1985), 472 U.S. 320, for the proposition that such an instruction impermissibly reduces the jury's sense of responsibility and increases the likelihood of a recommendation of death.

We considered and rejected this argument in *State* v. *Buell* (1986), 22 Ohio St. 3d 124, 143-144, 22 OBR 203, 219-220, 489 N.E. 2d 795, 811-812; *State* v. *Williams* (1986), 23 Ohio St. 3d 16, 21-22, 23 OBR 13, 18-19, 490 N.E. 2d 906, 912; *State* v. *Rogers* (1986), 28 Ohio St. 3d 427, 28 OBR 480, 504 N.E. 2d 52; *State* v. *Steffen* (1987), 31 Ohio St. 3d 111, 113-114, 31 OBR 273, 275, 509 N.E. 2d 383, 387-388; and *State* v. *Thompson* (1987), 33 Ohio St. 3d 1, 6, 514 N.E. 2d 407, 413. We are not persuaded by appellant's arguments to change our position.

Appellant argues in his third proposition of law that the use of the same

felony twice, to elevate the offense to aggravated murder and again to elevate it to capital aggravated murder, fails to narrow the class of offenders eligible for the death penalty. This court has rejected this argument. *State* v. *Jenkins* (1984), 15 Ohio St. 3d 164, 177-178, 15 OBR 311, 322-323, 473 N.E. 2d 264, 279-280. See *State* v. *Buell, supra,* at 141-142, 22 OBR at 218, 489 N.E. 2d at 810-811; *State* v. *Barnes* (1986), 25 Ohio St. 3d 203, 206-207, 25 OBR 266, 269, 495 N.E. 2d 922, 924-925; *State* v. *Steffen, supra,* at 114, 31 OBR at 275-276, 509 N.E. 2d at 388. For the reasons expressed in those decisions, we adhere to that position.

Appellant's fifteenth and sixteenth propositions of law attack the constitutionality of Ohio's death penalty statute and, additionally, assert that it is racially biased. We have determined these issues and have found the statute to be constitutional when measured against similar attacks. See *State* v. *Jenkins, supra*; *State* v. *Maurer* (1984), 15 Ohio St. 3d 239, 15 OBR 379, 473 N.E. 2d 768; *State* v. *Buell, supra*; *State* v. *Steffen, supra*; *State* v. *Zuern* (1987), 32 Ohio St. 3d 56, 512 N.E. 2d 585; *State* v. *Byrd* (1987), 32 Ohio St. 3d 79, 86, 512 N.E. 2d 611, 619. We decline to change our position and, therefore, find these propositions of law not well-taken.

In propositions of law thirteen and fourteen, appellant contends that proportionality review of capital cases must include a review of cases where an offender was eligible to receive, but did not receive, the death penalty. This court has, in *State* v. *Steffen, supra,*

previously rejected this argument. See, also, *State* v. *Byrd, supra,* at 86, 512 N.E. 2d at 619; *State* v. *Stumpf* (1987), 32 Ohio St. 3d 95, 107, 512 N.E. 2d 598, 610; and *State* v. *Post* (1987), 32 Ohio St. 3d 380, 391-392, 513 N.E. 2d 754, 765. We decline to alter our current position.

In propositions of law seven and nine, appellant questions the sufficiency of the opinion and the conclusions of the trial court. We have thoroughly reviewed the record and find no evidence that the trial court's conclusions were based, as appellant contends, on the conclusions of other courts. Further, we are convinced that the conditions set forth in R.C. 2929.03(F),[3] *State* v. *Maurer, supra,* at paragraph three of the syllabus (cf. *State* v. *Mapes* [1985], 19 Ohio St. 3d 108, 19 OBR 318, 484 N.E. 2d 140; and *State* v. *Martin* [1985], 19 Ohio St. 3d 122, 19 OBR 330, 483 N.E. 2d 1157) have been complied with by the trial court in its decision. These propositions of law are not well-taken.

In propositions of law eight and twelve, appellant questions the trial court's and court of appeals' weighing of the mitigating factors against the aggravating circumstances. Pursuant to our duty to independently weigh the aggravating circumstances against the mitigating factors, we address these propositions *infra.*

Appellant also contends, in proposition of law ten, that the prosecutor impermissibly commented upon appellant's silence. Appellant argues that the prosecutor's comments that the evidence was "uncontradicted" and "unrebutted" amount to comments re-

---

[3] R.C. 2929.03(F) provides in part:

"The court * * *, when it imposes sentence of death, shall state in a separate opinion its specific findings as to the existence of any of the mitigating factors set forth * * *, the existence of any other miti-gating factors, the aggravating circumstances the offender was found guilty of committing, and the reasons why the aggravating circumstances * * * were sufficient to outweigh the mitigating factors."

garding appellant's silence. We have considered and rejected a similar argument in *State* v. *Ferguson* (1983), 5 Ohio St. 3d 160, 5 OBR 380, 450 N.E. 2d 265, paragraph one of the syllabus.[4] We find that the comments herein were directed at the strength of the state's case, and not to appellant's silence. Additionally, the jury was specifically instructed by the trial court not to consider for any purpose appellant's failure to testify. Accordingly, appellant's tenth proposition of law is overruled.

Appellant additionally contends, in proposition of law five, that the prosecution incorrectly commented that appellant had been involved with the juvenile justice system on five prior occasions when, in fact, appellant had had no previous contact with the juvenile justice system. Further, notwithstanding the lack of a timely defense objection, appellant believes that such a comment is plain error and brings the validity of the death sentence into question. We disagree with both assertions.

We have reviewed the record and it is clear that the prosecutor had intended to state that appellant's prior contacts were with the *criminal* justice system and not the juvenile justice system.[5] Such a misstatement, while error, clearly does not rise to the level of plain error. See Crim. R. 52(B). See, also, *State* v. *Long* (1978), 53 Ohio St. 2d 91, 7 O.O. 3d 178, 372 N.E. 2d 804, paragraph three of the syllabus, and *State* v. *Rahman* (1986), 23 Ohio St. 3d 146, 153, 23 OBR 315, 321, 492 N.E.

2d 401, 408. Accordingly, proposition of law five is overruled.

In proposition of law eleven, appellant claims that the trial court erred by denying appellant's challenge for cause of a member of the jury panel. We have addressed and rejected similar arguments when criminal defendants fail to utilize all their peremptory challenges. See *State* v. *Eaton* (1969), 19 Ohio St. 2d 145, 48 O.O. 2d 188, 249 N.E. 2d 897, paragraph one of the syllabus, vacated on other grounds (1972), 408 U.S. 935; and *State* v. *Carter* (1970), 21 Ohio St. 2d 212, 214, 50 O.O. 2d 446, 447, 256 N.E. 2d 714, 715-716, vacated on other grounds (1972), 408 U.S. 936. Appellant failed to utilize six of his available twelve peremptory challenges. Accordingly, we find this proposition not well-taken.

In proposition of law six, appellant contends he was convicted and sentenced to death twice for killing a single person. We disagree. The record provides no factual foundation for appellant's contention. The trial court instructed the jury that there were only two aggravating circumstances under the first and second counts. Further, as there is only one order of execution, there can be only one conviction. See R.C. 2941.25(A) and *State* v. *Henderson* (1979), 58 Ohio St. 2d 171, 12 O.O. 3d 177, 389 N.E. 2d 494, wherein "conviction" includes *both* the guilt determination and the penalty imposition. Only one penalty of death was given to appellant. Thus, only one conviction actually occurred. Accordingly, ap-

---

[4] Paragraph one of the syllabus in *Ferguson, supra,* reads:

"A reference by the prosecutor in closing argument to uncontradicted evidence is not a comment on the accused's failure to testify, where the comment is directed to the strength of the state's evidence and not to the silence of the accused, and the jury is

instructed not to consider the accused's failure to testify for any purpose."

[5] Although some question has been raised concerning the accuracy of the record in this case, the court reporter has certified that the transcript is accurate and we will, as did the court of appeals, consider it to be accurate.

pellant's sixth proposition of law is not well-taken.

Appellant contends in his fourth proposition of law that during the closing arguments of the penalty phase in appellant's trial, the prosecutor impermissibly quoted from *Gregg* v. *Georgia* (1976), 428 U.S. 153, for the purpose of eliciting a recommendation of the penalty of death on the basis of a public demand for retribution.[6] We disagree.

This court, in *State* v. *Byrd, supra,* at 82-83, 512 N.E. 2d at 615-616, considered the propriety of reading a selection from the *Gregg* v. *Georgia* opinion to the jury during closing arguments. In *Byrd,* we found the practice of quoting from *Gregg* v. *Georgia* to be permissible in that particular instance, but cautioned prosecutors to avoid such closing argument techniques in the future. *Id.*

However, the prosecutor in the instant cause argued this case to the jury fully *two years prior* to our announcement in *Byrd.* More importantly, immediately preceding the prosecutor's quotation from *Gregg* v. *Georgia,* the trial court gave the following cautionary instruction to the jury:

"THE COURT: Ladies and gentlemen, what counsel — and we have instructed you in the other proceeding — what counsel says now in closing argument is not the law. It is not the evidence. The evidence that you will consider is what you heard from the witness stand, plus the exhibits. We do give them some latitude, to make reasonable inferences based on what the evidence is.

"With that in mind, we'll let Mr. Dinkelacker [an assistant prosecutor] proceed."

Additionally, in its general charge to the jury, the trial court stated:

"* * *

"You are not permitted to change the law nor to apply your own conception of what you think the law should be, nor are you to disregard the law in order to avoid an unpleasant decision.

"* * *

"Again, the opening statements of the attorneys, and closing arguments, which you have just heard, are not evidence.

"The opening statements and the closing arguments by the attorneys are designed to assist you, but they are not evidence."

Therefore, the jury was instructed to decide the penalty phase on the evidence presented and not on the grounds of retribution or counsel's argument. Further, notwithstanding the quotation from *Gregg* v. *Georgia,* the overall thrust of the prosecutor's argument was to emphasize the strength of the evidence supporting the aggravating circumstances and the lack of evidence supporting the mitigating factors. Accordingly, appellant was not prejudiced by the

---

[6] "MR. DINKELACKER: As I stated, ladies and gentlemen, this is from the Supreme Court of the United States, *Gregg* vs. *Georgia.* I will quote: 'Capital punishment is an expression of society's moral outrage at particularly offensive conduct. Its [*sic,* "This"] function may be unappealing to many, but it is essential in an ordered society that asks its citizens to rely on legal processes rather than self-help to vindicate their wrongs,' and I will quote specifically from Justice Stewart [in *Furman* v. *Georgia* (1972), 408 U.S. 238, 308, concurring opinion]: ' ["]The instinct for retribution is part of the nature of man, and channeling that instinct in the administration of criminal justice serves an important purpose in promoting the stability of a society governed by law.

" ['"]When people begin to believe that organized society is unwilling or unable to impose upon criminal offenders the punishment they deserve, then they have sewn [*sic,* "there are sown"] the seeds of anarchy, of self-help, vigilanty [*sic*] justice, and lynch law.["] ' "

reading of the quotation, and his fourth proposition of law is without merit.

We pause, once again, to caution that our decision herein does not condone the use of such closing argument techniques in capital cases. As we have stated both *supra* and in *State* v. *Byrd, supra,* such trial tactics are not proper. Although we have found no prejudicial effect in the quoting technique in the case now before us, this does not imply that the same result will be reached in other cases.

We now undertake the required independent weighing process to determine whether the aggravating circumstances that appellant was found guilty of committing outweigh the mitigating factors in this case. R.C. 2929.05(A).

The aggravating circumstances found to exist herein were that appellant, as the principal offender, committed the offense of aggravated murder of Kevin Flanaghan while he was committing or attempting to commit the offense of aggravated burglary, and that appellant committed the offense of aggravated murder of Kevin Flanaghan as part of a course of conduct involving the purposeful killing or attempt to kill both Kevin Flanaghan and John Hurt.

Appellant presented four witnesses, including his sister, his mother and his grandmother, in the penalty phase of the proceeding. Additionally, appellant addressed the jury with an unsworn statement. Appellant's witnesses testified that appellant was a religious person, a good student and steady worker, that appellant never had behavioral problems except those involving Tracy Abernathy and that appellant had no problems with the law as either a juvenile or an adult except the incidents with Abernathy, which resulted in convictions for felonious assault and domestic violence.

Appellant stated that Abernathy's mother instigated everything against appellant, that when he and Abernathy were together, she was a good mother and when he was not there, the children were neglected, that he had respect for both school authority and the law, and that he did not believe in violence or use drugs, profanity or alcohol.

R.C. 2929.04(B) provides that the sentencing authority "shall consider, and weigh against the aggravating circumstances proved beyond a reasonable doubt, the nature and circumstances of the offense, the history, character, and background of the offender, and all of the following [mitigating] factors:

"(1) Whether the victim of the offense induced or facilitated it;

"(2) Whether it is unlikely that the offense would have been committed, but for the fact that the offender was under duress, coercion, or strong provocation;

"(3) Whether, at the time of committing the offense, the offender, because of a mental disease or defect, lacked substantial capacity to appreciate the criminality of his conduct or to conform his conduct to the requirements of the law;

"(4) The youth of the offender;

"(5) The offender's lack of a significant history of prior criminal convictions and delinquency adjudications;

"(6) If the offender was a participant in the offense but not the principal offender, the degree of the offender's participation in the offense and the degree of the offender's participation in the acts that led to the death of the victim;

"(7) Any other factors that are relevant to the issue of whether the offender should be sentenced to death."

We find that of the above-enumerated factors, numbers (1), (2), (3) and (6) do not apply. Number (4) is not com-

pelling as appellant was twenty-five years old at the time of the offense. As to factor (5), appellant's past history of criminal convictions cannot be characterized as insignificant. Appellant's two convictions were of recent vintage and involved both violence *and* Tracy Abernathy. Accordingly, we find, as did the trial court and court of appeals, that this mitigating factor is entitled to little, if any, weight.

Other than the fact that there was testimony that appellant is a religious person, no other information is in evidence which might meet the conditions of factor (7). Accordingly, our view of the totality of the evidence compels us to conclude that the aggravating circumstances outweigh the mitigating factors beyond a reasonable doubt. Likewise, in considering the "nature and circumstances of the offense," we find nothing mitigating in the cold-blooded execution of one man and the attempted execution of another. From this consideration, we find that the aggravating circumstances outweigh the mitigating factors beyond a reasonable doubt and, accordingly, uphold appellant's sentence of death.

R.C. 2929.05 requires that, in addition to weighing the aggravating circumstances against the mitigating factors, this court review the proportionality of death sentences. The purpose of this review is to determine whether the penalty of death is unacceptable in the case under review because it is disproportionate to the punishment imposed upon others convicted of the same crime. *State v. Steffen, supra.*

Discharging our statutory duty, we find that compared with other capital cases decided by this court, the sentence herein is neither excessive nor disproportionate. The penalty of death has previously been imposed, and upheld as appropriate, in cases involving execution-style killings and multiple murders. *State v. Brooks* (1986), 25 Ohio St. 3d 144, 25 OBR 190, 495 N.E. 2d 407. We, therefore, hold that a sentence of death herein is neither excessive nor disproportionate to the penalty imposed in similar cases.

Accordingly, the judgment of the court of appeals is hereby affirmed.

*Judgment affirmed.*

MOYER, C.J., SWEENEY, LOCHER, HOLMES and H. BROWN, JJ., concur.

WRIGHT, J., concurs separately.

WRIGHT, J., concurring. While the majority asserts that it has not changed its posture with respect to the application of *Caldwell* v. *Mississippi* (1985), 474 U.S. 320, to cases where the jury's responsibility of imposing the death penalty is diminished, I must change mine.

I say this because it appears the United States Supreme Court has modified or "explained" the application of *Caldwell*[7] in the case of *Darden* v. *Wainwright* (1986), 477 U.S. 168. In *Darden,* the trial court accurately ex-

---

[7] *Caldwell* involved comments by a prosecutor during the sentencing phase of trial to the effect that the jury's decision as to life or death was not final, that it would automatically be reviewed by the state supreme court, and intimating that the jury should not be made to feel that the entire burden of the defendant's life was on it. The Supreme Court held that such comments "present[ ] an intolerable danger that the jury will in fact choose to minimize the importance of its role," *id.* at 333, a view that would be fundamentally incompatible with the Eighth Amendment requirement that the jury make an individualized decision that death is the appropriate punishment in a specific case. *Id.* at 340, fn. 7.

plained and stated the law at the *guilt* stage of the case and prosecutorial efforts to diminish the jury's responsibility were not evident at the sentencing stage.[8] That is generally the state of the record here.

While I still adhere to the position as expressed in my dissent in *State* v. *Williams* (1986), 23 Ohio St. 3d 16, 32-35, 23 OBR 13, 28-30, 490 N.E. 2d 906, 920-922, I must concur with the majority opinion in the case before us.

---

[8] In footnote 15 of the *Darden* opinion, the court stated:

"The comments in *Caldwell* were made at the sentencing phase of trial and were approved by the trial judge. In this case, the comments were made at the guilt-innocence stage of trial, greatly reducing the chance that they had any effect at all on sentencing. * * *" *Darden, supra,* 477 U.S. at 183.