[Cite as *Hoy v. OhioHealth Corp.*, 2019-Ohio-4693.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| C. Thomas Hoy, Administrator of the Estate of Oumou Diakite, | : | |
| | : | |
| Plaintiff-Appellant, | : | |
| | : | No. 19AP-37 |
| v. | | (C.P.C. No. 16CV-5305) |
| | : | |
| OhioHealth Corporation, et al., | | (REGULAR CALENDAR) |
| | : | |
| Defendants-Appellees. | : | |
| | : | |

D E C I S I O N

Rendered on November 14, 2019

**On brief:** *Colley Shroyer & Abraham Co. LPA*, and *David I. Shroyer,* for appellant. **Argued:** *David I. Shroyer.*

**On brief:** *Arnold Todaro & Welch, Co., L.P.A.*, *Grier D. Schaffer,* and *Gerald J. Todaro,* for appellees Francisco Garabis, M.D., and American Health Network Co. **Argued:** *Grier D. Schaffer.*

**On brief:** *Poling Law,* and *Frederick A. Sewards,* for appellees Hematology Oncology Consultants, Inc., Anitha Nallari, M.D., and Adam C. Necker, CNP. **Argued:** *Frederick A. Sewards.*

APPEAL from the Franklin County Court of Common Pleas

NELSON, J.

{¶ 1} Appealing the judgment that resulted from defense verdicts in this medical malpractice/wrongful death case, C. Thomas Hoy as Administrator of the Estate of Oumou Diakite advances a single assignment of error: "The trial court erred in failing to strike jurors for cause in accordance with R.C. 2313.17(B)(9) where the jurors indicated that they would not follow the law as given to them by the court, forcing Plaintiff to use peremptory

challenges to excuse jurors, and denying Plaintiff his constitutional right to a fair and impartial jury." Appellant's Brief at vi.

{¶ 2} But Mr. Hoy's appeal encounters two obstacles, each insurmountable. First, he failed during the jury selection process to exhaust his allocated allotment of peremptory challenges, and thus under precedent binding on this court waived any objection to the trial court's denial of his challenges for cause. Second, and perhaps even more fundamentally, the transcript of the jury selection proceedings in no way reflects that any prospective juror said or otherwise "indicated" that he or she would refuse to follow the judge's instructions.

{¶ 3} As to the first impediment, the Supreme Court of Ohio has said more than once and even in the context of capital cases that "error in the denial of a challenge of a juror for cause cannot be grounds for reversal when the defendant did not exhaust his peremptory challenges." *State v. Getsy*, 84 Ohio St.3d 180, 191 (1998), citing *State v. Poindexter*, 36 Ohio St.3d 1, 5 (1988). "The validity of the *Getsy* rule has also been recognized in a civil case. * * * [T]o the extent that appellants challenge the court's 'challenge for cause' procedures, appellants' decision at trial not to utilize their remaining peremptory challenges is grounds for waiver on appeal." *Pennell v. Dewan*, 5th Dist. No. 2004CA00221, 2005-Ohio-1727, ¶ 31 (citation omitted).

{¶ 4} Mr. Hoy acknowledges that he was accorded six initial peremptory challenges (not including the two that he used in the selection of alternate jurors), and that he exercised only three; with his subsequent "pass" followed by defendants' own, the selection of the first eight jurors was done. *See* Appellant's Reply Brief at 9-11; November 26, 2018 Voir Dire Tr. at 140-41. Mr. Hoy did not exhaust his peremptory challenges, and therefore cannot invoke the trial court's denial of challenges for cause as grounds for reversal. *Getsy*, 84 Ohio St.3d at 191.

{¶ 5} Because there may be some resonance, however, in Mr. Hoy's argument that the trial court's denial of his challenges for cause influenced and prejudicially limited how he used his peremptory challenges, *see* Appellant's Reply Brief at 10-12, and because concern for bedrock principles of our constitutionally enshrined jury system along with the briefing of all sides has drawn us to further examination of the record, we explain why Mr. Hoy's protestations about juror selection would be unavailing even had they not been waived.

{¶ 6} Mr. Hoy challenged seven prospective jurors for cause and the trial judge denied those challenges. *See* Voir Dire Tr. at 131-35. Throughout his briefing to us, Mr. Hoy insists that each of those seven "stated that they would require more than a preponderance of the evidence to find in favor of the decedent's estate * * *." *See, e.g.,* Appellant's Brief at 24, and again at 31; Appellant's Reply Brief at 5-6 (same); *see also* Appellant's Brief at 15 (referencing two prospective jurors who "would * * * not apply the preponderance of the evidence standard"), 16 (two more "who indicated they would require greater than a preponderance of the evidence"), 19 (all seven "clearly indicated that they would require more than a preponderance of the evidence to find in favor of the decedent's estate"); Appellant's Reply Brief at 10 (certain prospective jurors "who indicated they would require greater than a preponderance of the evidence"). But having reviewed with some care the transcript of jury selection proceedings, we do not find that these prospective jurors were even asked what they would "require" in the context of this case, let alone that they responded that they would disregard instructions that the judge would provide.

{¶ 7} In our perhaps more dispassionate reading, the transcript of the voir dire proceeding doesn't square with Mr. Hoy's characterizations of it. Indeed, electronic search confirms that the word "require," so frequently repeated in Mr. Hoy's briefing to us, was only used once during the questioning of jurors—and then only in a remark by Mr. Hoy's counsel that "you'll be required to make all your decisions on the basis of whether we are more likely right or wrong," leading, three sentences later, to his inquiry: "Anybody have an issue with that?" Voir Dire Tr. at 73-74. The transcript does not reflect that anybody did have an issue with that. *Id.* Nor does the transcript reflect any untoward (or other verbalized) response to the lawyer's question some lines later: "can all of you follow that law if that's what you hear from the court?" *Id.* at 74 (before shifting gears and prefacing a question with, "[n]ow, how about, ma'am, some people want to be sure * * * *," a line of questioning that we address below).

{¶ 8} As reflected more fully in the transcript passages quoted at length in Mr. Hoy's opening brief, *see* Appellant's Brief at 4-12, much of the questioning by Mr. Hoy's counsel went to potential jurors' policy views, or to their personal feelings, hopes, or desires with regard to decision-making. This part of the inquiry began with a discursive policy-

based question as to how prospective jurors might think the burden of proof *ought* ideally to be allocated:

> In trials like this, jurors make decisions on the basis of whether my side is more likely right or wrong. Some folks think that more likely right than wrong is not fair because it makes it too easy, you know, on my side, and too hard for the other side, because, you know, some people, you don't really have to prove much. Other folks feel that it's okay that if I'm here and here, then this side wins. So I'm going to ask you to just ask yourself in your mind, Are you a little closer to those people who think it's a little unfair from my side to be just a little bit more right than wrong to prevail in the case? Or are you more on the side that, you know, that's okay? So where would you put yourself?

Voir Dire Transcript at 72.

{¶ 9} From questions of abstract policy "fair[ness]," the questioning moved to matters of personal feelings. *See, e.g., id.* at 74 (after describing preponderance standard, counsel asks "Sir, how do you feel about that?"). The discussion then progressed to personal desires. After saying, "[n]ow, how about, ma'am, some people want to be sure," the lawyer continued: "They want to be 90 percent sure, a hundred percent sure. How low down would you go?" *Id.* Whether the question was how low would the potential juror go in what she would "want" or what she would "want to be * * * sure" may not have been entirely clear. So after a response, the lawyer followed up: "How do you feel about the weighting? Do you kind of want to see more of a 60 or 70 or 80 percent?" *Id.* at 75. After another question on feelings, the lawyer made broader, even more abstract inquiry about everyday reasoning: "When you're analyzing a fact pattern, do you tend to want to see more like a 60 percent or 70 percent or 90 percent?" *Id.* When one juror noted that "[if] the consequences are significant, then I may not want razor-thin. I maybe want to have a little bit more weight on the side that would ultimately win" —as who wouldn't?—the lawyer said, "[t]ell me more about that then," before returning to ask another juror, "how do you feel?" *Id.* at 76-77.

{¶ 10} From there, and not including counsel's designations of particular respondents and inquiries of certain of the prospective jurors he did not challenge for cause, his operative questions included: "tell me more about your comfort level with that"; "[h]ow do you feel about that?" (apparently relating to a juror response to the question of "[w]hen you're analyzing a fact pattern, do you tend to want to see more like a 60 percent or 70

percent or 90 percent?," and eliciting the answer "70/30"); "what number would you like, would you feel most comfortable with?"; and "how do you feel? Do you want to see more than just * * * *"  *Id.* at 757-81.

{¶ 11} In response to this last inquiry, the prospective juror said, "I think I feel comfortable with 51 percent.  I don't think I want to consider the consequences.  I want to consider what I've learned and heard and feel confident in that, and then the consequences follow."  *Id.* at 81.  Mr. Hoy's counsel then posed a question of simple logic, again not limited to the trial setting:

> [COUNSEL]:  If I give you an example of I've got a sack of balls here and I put eight yellow balls in and seven black balls, shake them up and randomly draw one and pull one out, have I shown you that I picked a yellow ball?
>
> [The juror responded with the only mathematically correct answer:  "No."]
>
> [COUNSEL]:  Statistically, it's more likely than not it's a yellow ball?
>
> THE JUROR:  Yes.
>
> [COUNSEL]:  You would want to see me open my hand, don't you?  That's kind of the concept we're talking about.

*Id.* at 81 (concluding that line of questioning).  The lawyer later moved to dismiss that prospective juror for cause.  Voir Dire Tr. at 135.

{¶ 12} None of that, and none of any of these prospective jurors' responses to counsel's questions, "stated" or "indicated" on our reading that any potential juror would "require" a level of proof in the case contrary to that the trial judge would specify, or that he or she "would not * * * apply" the preponderance standard.  And just as no juror was asked what he or she would "require" in rendering a verdict, no juror was asked or responded to what legal standard he or she would "apply" or refuse to "apply" (a word that appears nowhere in the transcript of juror questioning).  How prospective jurors "feel" about the allocation of proof, or what level of proof ideally they would "want" to have, or would "feel most comfortable with," or whether they believe that an 8 in 15 chance equates with certainty, does not speak to what they would "require" as duly instructed jurors in the case at hand.

{¶ 13} The prospective juror who responded to the question about what he would "want to see" "[w]hen you're analyzing a fact pattern," Voir Dire Tr. at 75, by saying eventually: "if we're gambling on something and we're going to win a penny, I don't really care that much. If I'm gambling on something for a million dollars, I'm invested significantly in that situation. So something of this nature, if the consequences one way or the other are small or great, it would probably influence my ability to render 51/49 as adequate," *id.* at 76-77, is lifted out of that gambling scenario in Mr. Hoy's briefing and portrayed as someone "who stated when questioned during *voir dire* that if the case was worth a penny, he could apply the preponderance standard, but not otherwise." Appellant's Brief at 15. But he wasn't being asked about "the case," and that's not what he said.

{¶ 14} Nor is the potential juror who answered the question, "what number would you like, would you feel most comfortable with?" by speaking in terms of "55/45," *see* Voir Dire Tr. at 80, fairly portrayed as someone "who would also not apply the preponderance of the evidence standard," *see* Appellant's Brief at 15. Nor is the juror who would "feel comfortable with 51 percent" and who answered the question about whether counsel had "shown you that I picked a yellow ball" fairly described as someone "who indicated they would require greater than a preponderance of the evidence." *Compare* Voir Dire Tr. at 81 *with* Appellant's Brief at 16. Nor are any of the other potential jurors justly lumped into Mr. Hoy's "for cause" class on the basis of the questions they actually were asked and the answers they actually gave. Having studiously avoided asking potential jurors what legal standards they would "require" and what standards they "would * * * not apply," *compare, e.g.,* Appellant's Brief at 15, 19, Mr. Hoy is not in a position now to attribute answers to them in his brief.

{¶ 15} Questions of the sort they *were* asked, which never veered fully into inquiries along the line of 'if you could be any sort of a tree * * *,' may be entirely appropriate and may well elicit answers that can inform a lawyer's judgments on peremptory challenges. Especially to that end, indirection can be quite useful. But at least in this case, the questions as posed did not generate responses that from the standpoint of this reviewing court required dismissal for cause.

{¶ 16} In fact, not only do these jurors seem to have indicated no problem with observing a preponderance of the evidence standard "if that's what you hear from the

court," *Id.* at 74 (question by Mr. Hoy's counsel), they routinely indicated to the judge that they could be impartial, *see, e.g., id.* at 41 (juror later challenged for cause), and appear to have reconfirmed that commitment under questioning by defense counsel, *see id.* at 99: "Does anybody here have a problem with following the instructions that Judge Frye gives you that tells you what the law is, on what preponderance of the evidence is and how you're to weigh the evidence?  None of you?  All right."

{¶ 17}  And, at the end of the questioning of the prospective jurors, the judge himself returned to the matter:

> It is true under Ohio law that the greater weight of the evidence is what you're supposed to use to decide a civil case, but that is not defined mathematically.
>
> Now, it's perfectly appropriate for [plaintiff's counsel] to talk about 51/49 because, in a mathematical sense, that is the greater weight.  But there's nothing in a formula that we're going to ask you to put on the jury verdict form, Well, how much is the weight of the evidence on this side, you know. Obviously, we are not going to count witnesses * * * * [I]t's not a, Well, they got four and he's got one and, therefore, they win. It's the quality intellectually of the evidence.  Is everybody comfortable with those rules?  All right.

Voir Dire Tr. at 92-93.

{¶ 18}  We do not find this to be a case like *Klem v. Conrail*, 191 Ohio App.3d 690, 2010-Ohio-3330 (6th Dist.), where two potential jurors should have been excused for cause.  There, the jury selection transcript showed that the pair "had difficulty setting aside the concept of assumption of the risk"; one questioned the validity of the law specifically applicable to the case and acknowledged it would be "difficult" to accept the judge's instructions on that score, in his words "[p]otentially" making it harder for the plaintiff to prove his case, while the other admitted "I have that issue" as well and said that his disagreement with the law "would make it far more difficult" for plaintiff's counsel to prevail.  *Id.* at 713-14.  No analogous showing is made here.

{¶ 19}  A prospective juror is subject to challenge for cause if "the person discloses by the person's answers that the person cannot be a fair and impartial juror or will not follow the law as given to the person by the court."  R.C. 2313.17(B)(9).  "The determination of whether a prospective juror should be disqualified for cause pursuant to [that statutory

subsection as formerly numbered] is a discretionary function of the trial court. Such determination will not be reversed on appeal absent an abuse of discretion." *Berk v. Matthews*, 53 Ohio St.3d 161 (1990), syllabus (citation omitted). " 'The term "abuse of discretion" * * * implies that the court's attitude is unreasonable, arbitrary or unconscionable.' Consequently, when applying this standard, an appellate court is not free to substitute its judgment for that of the trial judge. [Here], the trial court had the opportunity to observe the demeanor of the prospective juror and evaluate firsthand the sincerity of her responses to questions." *Id.* at 169 (citations omitted). Where the trial court has "any doubt as to the juror being entirely unbiased," it must excuse the prospective juror for cause, and failing that will be reversed on appeal where "but one conclusion could have been legally drawn from the undisputed facts" so as to establish juror bias. *Lingafelter v. Moore,* 95 Ohio St. 384, 390 (1917).

{¶ 20} In this case, we understand the trial court to have considered the prospective jurors' responses to all the questions posed by counsel for all sides and the court, *see, e.g,* Voir Dire Tr. at 132 (court does not adopt characterization of Mr. Hoy's counsel, saying "I didn't hear it that way as balanced by the court's comments after you got done and the comments put on the record by defense counsel"), and to have concluded that none was incapable of being fair and of following the law as instructed by the court. The actual responses of none of these potential jurors as cited by Mr. Hoy reflected " 'a significant potential for prejudice in the matter at trial,' " *see* Appellant's Brief at 29, quoting Patterson & Neufer, "Removing Juror Bias by Applying Psychology to Challenges for Cause," *Cornell Journal of Law and Public Policy*, Vol. 7, Issue 1, p. 1906 (1977), and there is no rule in the law that the trial court had to disregard their statements of willingness to be fair and follow the judge's instructions. As in *State v. Spirko*, 59 Ohio St.3d 1, 24 (1991), "[t]he court's reliance on the truthfulness of the juror's responses was not, in our opinion, an abuse of discretion that warrants a reversal." Having reviewed the record, we do not find that the trial court abused its discretion in declining to dismiss these prospective jurors for cause. *See, e.g., State v. Albert*, 10th Dist. No. 06AP-439, 2006-Ohio-6902, ¶ 65 (applying abuse of discretion standard to R.C. 2313.17(B)(9) precursor).

{¶ 21} "It is beyond question that the right of trial by jury guaranteed by the constitution carries with it * * * the right to a trial by a jury composed of unbiased and

unprejudiced jurors." *Lingafelter*, 95 Ohio St. at 387. That right is not undermined by the trial court's denial of a request to excuse a juror for cause based simply on the prospective juror's initial abstract preference for (or higher "comfort level" with) more certainty rather than less in making important decisions or "[w]hen * * * analyzing a fact pattern." The trial court saw the body language and heard the intonations of each of the prospective jurors, and determined, as the judge put it with regard to two of their number, that "they can follow the law." Voir Dire Tr. at 135. On the record as presented to us, we see no reversible error in that conclusion.

{¶ 22} Mr. Hoy's lone assignment of error is overruled.

{¶ 23} During the course of this appeal, Defendants-Appellees have presented us with two "joint motion[s] to strike." They object to "seating diagrams" in Mr. Hoy's opening brief that they say go beyond matters ascertainable from the record because "[i]t is not always possible to tell [from the transcript] which [prospective] juror is speaking," *see* April 4, 2019 Joint Motion to Strike Diagrams at 4; they also object to an argument relating to the trial court's having posed questions to the group of prospective jurors, rather than individually, that they say was not preserved below but that they neglected to challenge on that basis in their opposition brief, *see* May 10, 2019 Second Joint Motion to Strike at 1-2, and they object to Mr. Hoy's courtesy attachment to his reply brief of a couple law review articles as submitted (presumably) in attempt to bolster his propositions.

{¶ 24} Neither of these motions is well taken, and we deny them both. Diagrams can be helpful, and while lawyers do from time to time attempt to argue from matters not reflected in the record, we are equipped to discern whether a contention has support in the record, or not: the most useful way for a party to note that something in an opening brief is from outside the record is to explain that in the opposition brief. The same would have been true of the argument said not to have been preserved on appeal (although in this instance, the issue is hard to distinguish from the broader claim of juror bias that was argued below). By contrast, citations to authority (or even to law review articles) need not have been specified in the trial court in order to be used here, to the extent that they support arguments that were made. And filing copies of publically available law review articles so that they more easily may be taken for whatever they're worth, if anything, violates no written rule of which we are aware.

{¶ 25} Having dispatched with the motions and having overruled Mr. Hoy's assignment of error, we affirm the judgment of the Franklin County Court of Common Pleas.

*Motions denied;*
*judgment affirmed.*

KLATT, P.J., concurs.
LUPER SCHUSTER, J., concurs in judgment only.