[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State v. Mason,* Slip Opinion No. 2018-Ohio-1462.]

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2018-OHIO-1462

THE STATE OF OHIO, APPELLEE, *v*. MASON, APPELLANT.

[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State v. Mason,* Slip Opinion No. 2018-Ohio-1462.]

*Criminal law—Sixth Amendment to the United States Constitution—Death penalty—Right to trial by jury—Ohio death-penalty scheme does not violate the Sixth Amendment, because the jury must find that offender guilty beyond a reasonable doubt and that an aggravating circumstance exists.*

(No. 2017-0200—Submitted January 23, 2018—Decided April 18, 2018.)

APPEAL from the Court of Appeals for Marion County, No. 9-16-34, 2016-Ohio-8400.

_____

FISCHER, J.

{¶ 1} At issue in this case is whether Ohio's death-penalty scheme violates the right to a trial by jury as guaranteed by the Sixth Amendment to the United States Constitution. The Marion County Court of Common Pleas found that it does,

but the Third District Court of Appeals reversed the trial court's judgment. Because the Ohio scheme satisfies the Sixth Amendment, we affirm.

## I. Facts and Procedural History

{¶ 2} A jury found that appellant, Maurice Mason, raped and murdered Robin Dennis in 1993. *See State v. Mason*, 82 Ohio St.3d 144, 148, 694 N.E.2d 932 (1998). The jury found Mason guilty of aggravated murder with a felony-murder capital specification, rape, and having a gun while under disability. The jury recommended a death sentence, and the trial court sentenced him to death. The Third District Court of Appeals and this court affirmed the convictions and sentence. *State v. Mason*, 3d Dist. Marion No. 9-94-45, 1996 WL 715480 (Dec. 9, 1996); *Mason*, 82 Ohio St.3d 144, 694 N.E.2d 932.

{¶ 3} In 2008, after finding that Mason's trial counsel had provided ineffective assistance, the United States Court of Appeals for the Sixth Circuit granted a conditional writ of habeas corpus and remanded the case to the trial court for a new penalty-phase trial. *Mason v. Mitchell*, 543 F.3d 766, 768 (6th Cir.2008). On remand, Mason moved the trial court to dismiss the capital specification from his indictment, arguing that Ohio's death-penalty scheme violates the Sixth Amendment right to trial by jury. He relied on the United States Supreme Court's decision in *Hurst v. Florida*, ___ U.S. ___, 136 S.Ct. 616, 624, 193 L.Ed.2d 504 (2016), which invalidated Florida's former capital-sentencing scheme because it "required the judge alone to find the existence of an aggravating circumstance." The trial court granted Mason's motion, and the state appealed to the Third District Court of Appeals, which reversed the judgment and remanded the case.

{¶ 4} On appeal here, Mason argues that Ohio's death-penalty scheme is unconstitutional under *Hurst*.

## II. Analysis

### A. Standard of Review

{¶ 5} We must presume that the death-penalty scheme enacted by the General Assembly is constitutional. R.C. 1.47. To prevail on his facial challenge, Mason must establish "beyond a reasonable doubt that the legislation and constitutional provisions are clearly incompatible." *State ex rel. Dickman v. Defenbacher*, 164 Ohio St. 142, 128 N.E.2d 59 (1955), paragraph one of the syllabus. Thus, "doubts regarding the validity of a legislative enactment are to be resolved in favor of the statute." *State v. Gill*, 63 Ohio St.3d 53, 55, 584 N.E.2d 1200 (1992).

### B. Ohio's Death-Penalty Scheme

{¶ 6} R.C. 2929.03 and 2929.04 establish what is required for a death sentence to be imposed in Ohio when the defendant elects to be tried by a jury. The essential steps outlined below are required under current law and under the versions of R.C. 2929.03 and 2929.04 in effect when Dennis was killed in 1993. *See* Am.Sub.S.B. No. 1, 139 Ohio Laws, Part I, 1, 9-17. Although the Ohio General Assembly has since amended R.C. 2929.03 and 2929.04, because the changes to the wording at issue in this appeal were not substantive, the amendments do not affect the analysis in this case.

{¶ 7} First, to face the possibility of a death sentence, a defendant must be charged in an indictment with aggravated murder and at least one specification of an aggravating circumstance. R.C. 2929.03(A) and (B). The state charged Mason with aggravated murder under R.C. 2903.01(B) and an aggravating circumstance (committing aggravated murder while committing rape) under R.C. 2929.04(A)(7).

{¶ 8} Second, the jury verdict must state that the defendant is found guilty of aggravated murder and must state separately that he is guilty of at least one charged specification. R.C. 2929.03(B). The state must prove guilt of the principal charge and of any specification beyond a reasonable doubt. *Id.*; R.C. 2929.04(A).

The jury found Mason guilty of aggravated murder and the charged aggravating circumstance.

{¶ 9} Third, once the jury finds the defendant guilty of aggravated murder and at least one specification, he will be sentenced either to death or to life imprisonment. R.C. 2929.03(C)(2). When the defendant is tried by a jury, the penalty "shall be determined * * * [b]y the trial jury and the trial judge." R.C. 2929.03(C)(2)(b).

{¶ 10} Fourth, in the sentencing phase, the court and trial jury shall consider (1) any presentence-investigation or mental-examination report (if the defendant requested an investigation or examination), (2) the trial evidence relevant to the aggravating circumstances the offender was found guilty of committing and relevant to mitigating factors, (3) additional testimony and evidence relevant to the nature and circumstances of the aggravating circumstances and any mitigating factors, (4) any statement of the offender, and (5) the arguments of counsel. R.C. 2929.03(D)(1). In this proceeding, the state must prove beyond a reasonable doubt that "the aggravating circumstances the defendant was found guilty of committing are sufficient to outweigh the factors in mitigation of the imposition of the sentence of death." *Id.*

{¶ 11} Fifth, the *jury finds* and then recommends the sentence: "If the *trial jury* unanimously *finds*, by proof beyond a reasonable doubt, that the aggravating circumstances * * * outweigh the mitigating factors, the *trial jury* shall recommend to the court that the sentence of death be imposed on the offender." (Emphasis added.) R.C. 2929.03(D)(2). But "[a]bsent such a finding" by the jury, the jury shall recommend one of the life sentences set forth in R.C. 2929.03(D)(2), and the trial court "shall impose the [life] sentence recommended." R.C. 2929.03(D)(2). Also, if the jury fails to reach a verdict unanimously recommending a sentence, the trial court must impose a life sentence. *State v. Springer*, 63 Ohio St.3d 167, 586 N.E.2d 96 (1992), syllabus.

4

**{¶ 12}** Sixth, if the trial jury recommends a death sentence, and if "the court *finds*, by proof beyond a reasonable doubt, * * * that the aggravating circumstances * * * outweigh the mitigating factors, [the court] shall *impose* sentence of death on the offender." (Emphasis added.) R.C. 2929.03(D)(3). Then, the court must state in a separate opinion "the reasons why the aggravating circumstances * * * were sufficient to outweigh the mitigating factors." R.C. 2929.03(F).

*C.  Sixth Amendment Caselaw*

1.  *Apprendi*, *Ring*, and *Hurst*

**{¶ 13}** Mason's Sixth Amendment claim principally relies on *Hurst*, which, in turn, relied on *Apprendi v. United States*, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), and *Ring v. Arizona*, 536 U.S. 584, 122 S.Ct. 2428, 153 L.Ed.2d 556 (2002). *Apprendi* involved New Jersey's "hate crime" law, which allowed a trial court to enhance an offender's penalty if the trial judge found that the offender had been motivated by racial or other bias in committing an offense. *Apprendi* at 468. The question in *Apprendi* was whether such an aggravating fact must be found by a jury based on proof beyond a reasonable doubt. *Id*. at 469. *Apprendi* held that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Id*. at 490.

**{¶ 14}** Two years later, in *Ring*, the Supreme Court applied *Apprendi* to invalidate Arizona's former death-penalty scheme, which permitted imposition of a death sentence based *solely* on a trial judge's finding of the existence of a statutory aggravating circumstance. *See Ring* at 609. The *Ring* court concluded that an aggravating circumstance in a capital case was " 'the functional equivalent of an element of a greater offense' " that must be submitted to a jury. *Id*., quoting *Apprendi* at 494, fn. 19. Arizona's death-penalty law violated the Sixth Amendment because that law required the trial judge alone to find the aggravating facts necessary to sentence a defendant to death. *See id*. at 609.

{¶ 15} The Supreme Court applied *Apprendi* and *Ring* in *Hurst*. A jury found Timothy Hurst guilty of first-degree murder. Although that offense was a capital felony under Florida law, the jury's verdict alone did not qualify Hurst for the death penalty: at the time of his conviction, Florida law provided that " '[a] person who has been convicted of a capital felony shall be punished by death' only if an additional sentencing proceeding 'results in findings by the court that such person shall be punished by death.' " *Hurst*, ___ U.S. at ___, 136 S.Ct. at 620, 193 L.Ed.2d 504, quoting former Fla.Stat. 775.082(1), C.S.H.B. No. 3033, Ch. 98-3, Laws of Fla. In Hurst's sentencing proceeding, the jury, as required by former Fla.Stat. 921.141(2), C.S.H.B. 207, Ch. 96-302, Laws of Fla., rendered an "advisory sentence" recommending death, but Florida law did not require the jury to specify the aggravating circumstances that influenced its decision. *Id.*, citing former Fla. Stat. 921.141. The sentencing judge then imposed a death sentence after independently determining and weighing aggravating circumstances and mitigating factors. *Id.*, citing former Fla.Stat. 921.141(3). Hurst's sentencing judge, who explained her findings in writing, found that two aggravating circumstances existed. *Id.*

{¶ 16} The United States Supreme Court began its review of Hurst's Sixth Amendment claim by reciting *Apprendi*'s basic tenet: "any fact that 'expose[s] the defendant to a greater punishment than that authorized by the jury's guilty verdict' is an 'element' that must be submitted to a jury." *Hurst* at ___, 136 S.Ct. at 621, quoting *Apprendi*, 530 U.S. at 494, 120 S.Ct. 2348, 147 L.Ed.2d 435. It then explained that the *Apprendi* rule had required invalidation of Arizona's death-penalty scheme in *Ring* because Arizona had allowed the imposition of the death penalty based solely on judicial fact-finding of the aggravating facts. *Hurst* at ___, 136 S.Ct. at 621, citing *Ring*, 536 U.S. at 591-593, 597, 604, 122 S.Ct. 2428, 153 L.Ed.2d 556. The *Hurst* court concluded that under the same analysis, Florida's scheme had to be invalidated, because Florida did "not require the jury to make the

critical findings necessary to impose the death penalty." *Id*. at ___, 136 S.Ct. at 622. The court observed that the Florida jury's advisory sentence was immaterial for Sixth Amendment purposes, because it did not include " 'specific factual findings with regard to the existence of mitigating or aggravating circumstances and its recommendation [was] not binding on the trial judge.' " *Id*., quoting *Walton* v. *Arizona*, 497 U.S. 639, 648, 110 S.Ct. 3047, 111 L.Ed.2d 511 (1990). The court held that Florida's scheme violated the Sixth Amendment because Florida law "required the judge alone to find the existence of an aggravating circumstance." *Id*. at ___, 136 S.Ct. at 624.

2. Past Sixth Amendment Challenges to Ohio's Death-Penalty Scheme

**{¶ 17}** After the *Ring* decision was issued in 2002, we held that Ohio's death-penalty scheme does not violate the Sixth Amendment right to a jury trial. *See State v. Hoffner*, 102 Ohio St.3d 358, 2004-Ohio-3430, 811 N.E.2d 48, ¶ 68-70. We explained that in contrast to Arizona's scheme, Ohio's capital-sentencing scheme places the responsibility for making all factual determinations regarding whether a defendant should be sentenced to death with the jury. *Id*. at ¶ 69. We noted that "R.C. 2929.03 charges the jury with determining, by proof beyond a reasonable doubt, the existence of any statutory aggravating circumstances and whether those aggravating circumstances are sufficient to outweigh the defendant's mitigating evidence." *Id*., citing R.C. 2929.03(B) and (D). *See also State v. Skatzes*, 104 Ohio St.3d 195, 2004-Ohio-6391, 819 N.E.2d 215, ¶ 221.

**{¶ 18}** After the *Hurst* decision, we revisited the issue in *State v. Belton*, 149 Ohio St.3d 165, 2016-Ohio-1581, 74 N.E.3d 319, ¶ 59, stating that "Ohio's capital-sentencing scheme is unlike the laws at issue in *Ring* and *Hurst*." In reaching that conclusion, we reasoned that Ohio law requires a jury in a capital case to make the findings required by the Sixth Amendment, because "the determination of guilt of an aggravating circumstance renders [an Ohio] defendant eligible for a

capital sentence," *id*., and the weighing of aggravating circumstances against mitigating factors "is *not* a fact-finding process subject to the Sixth Amendment," (emphasis sic) *id*. at ¶ 60. Mason argues that *Belton* is not controlling here, because the *Hurst* question was not squarely presented in that case.

### D. Ohio's Death-Penalty Scheme and the Sixth Amendment

{¶ 19} The Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury." This entitles criminal defendants "to a jury determination of any fact on which the legislature conditions an increase in their maximum punishment." *Ring*, 536 U.S. at 589, 122 S.Ct. 2428, 153 L.Ed.2d 556. *See also Hurst*, ___ U.S. at ___, 136 S.Ct. at 619, 193 L.Ed.2d 504 ("The Sixth Amendment requires a jury, not a judge, to find each fact necessary to impose a sentence of death"). Ohio's death-sentence scheme satisfies this right.

{¶ 20} When an Ohio capital defendant elects to be tried by jury, the jury decides whether the offender is guilty beyond a reasonable doubt of aggravated murder and—unlike the juries in *Ring* and *Hurst*—the aggravating-circumstance specifications for which the offender was indicted. R.C. 2929.03(B). Then the jury—again unlike in *Ring* and *Hurst*—must "unanimously find[], by proof beyond a reasonable doubt, that the aggravating circumstances the offender was found guilty of committing outweigh the mitigating factors." R.C. 2929.03(D)(2). An Ohio jury recommends a death sentence only after it makes this finding. *Id*. And without that recommendation by the jury, the trial court may not impose the death sentence.

{¶ 21} Ohio law requires the critical jury findings that were not required by the laws at issue in *Ring* and *Hurst*. *See* R.C. 2929.03(C)(2). Ohio's death-penalty scheme, therefore, does not violate the Sixth Amendment. Mason's various arguments to the contrary misapprehend both what the Sixth Amendment requires and what it prohibits.

### 1. Death Eligibility

**{¶ 22}** Mason's arguments focus on the sentencing phase within Ohio's death-penalty scheme—namely, the "weighing" process that follows after a defendant has been found guilty of aggravated murder and at least one capital specification. He contends that the jury does too little during this phase (merely recommending a death sentence), while the trial court does too much (imposing the sentence based on its own specific, written findings). Before addressing these points, it is necessary to consider a threshold question: does the weighing that occurs in the sentencing phase—after the jury already has found the existence of an aggravating circumstance—constitute fact-finding under the Sixth Amendment?

**{¶ 23}** *Hurst* does not answer, or even address, this question. The question in *Hurst* was more basic: did the Florida scheme require that a Florida jury make a finding of fact as to an aggravating circumstance before a sentence of death was imposed? *See Hurst*, ___ U.S. at ___, 136 S.Ct. at 622, 193 L.Ed.2d 504. Florida's former capital-sentencing scheme was unconstitutional because, instead of requiring the jury to make the critical finding before making its recommendation, it "required the judge alone to find the existence of an aggravating circumstance." *Id*. at ___, 136 S.Ct. at 624. The *Hurst* court did refer to Florida's weighing process by mentioning the role mitigating facts play in capital sentencing. *Id.* at ___, 136 S.Ct. at 622, quoting *Walton*, 497 U.S. at 648, 110 S.Ct. 3047, 111 L.Ed.2d 511 (a Florida jury " 'does not make specific factual findings with regard to the existence of mitigating or aggravating circumstances' "); *id*., quoting former Fla.Stat. 921.141(3) ("The trial court *alone* must find 'the facts * * * [t]hat sufficient aggravating circumstances exist' and '[t]hat there are insufficient mitigating circumstances to outweigh the aggravating circumstances' " [emphasis, ellipsis, and brackets sic]). But those references merely described Florida's scheme; the court's holding did not address the weighing process. In the end, the court held only that Florida's sentencing scheme violated the Sixth Amendment because it "required the judge alone to find the

existence of an aggravating circumstance." *Id*. at \_\_\_, 136 S.Ct. at 624. With that in mind, it is necessary to consider additional caselaw on the subject.

*a. The nature of the weighing process*

{¶ 24} The United States Supreme Court has recognized "two different aspects of the capital decision-making process: the eligibility decision and the selection decision." *Tuilaepa v. California*, 512 U.S. 967, 971, 114 S.Ct. 2630, 129 L.Ed.2d 750 (1994). For purposes of the Eighth Amendment, a defendant is eligible for the death penalty if the trier of fact finds him guilty of murder and at least one aggravating circumstance. *Id*. at 972. This determination is necessarily factual. *Id*. at 973. *See also Kansas v. Carr*, \_\_\_ U.S. \_\_\_, 136 S.Ct. 633, 642, 193 L.Ed.2d 535 (2016) (stating that "the aggravating-factor determination (the so-called 'eligibility phase') * * * is a purely factual determination"). "The selection decision, on the other hand, requires individualized sentencing and must be expansive enough to accommodate relevant mitigating evidence so as to assure [sic] an assessment of the defendant's culpability." *Tuilaepa* at 973. This, the Supreme Court has said, "is mostly a question of mercy," involving an exercise of judgment. *Carr* at 642. *See also Tuilaepa* at 978 ("at the selection stage, the States are not confined to submitting to the jury specific propositional questions"). Thus, the selection decision does not obviously involve a determination of fact.

{¶ 25} The eligibility/selection distinction is relevant under the Sixth Amendment in capital cases because the Sixth Amendment requires a jury to find beyond a reasonable doubt all *facts* that make a defendant death-eligible. *See Hurst* at \_\_\_, 136 S.Ct. at 619 (referring to "each fact necessary to impose a sentence of death"); *Ring*, 536 U.S. at 589, 122 S.Ct. 2428, 153 L.Ed.2d 556 ("Capital defendants, no less than noncapital defendants * * * are entitled to a jury determination of any fact on which the legislature conditions an increase in their maximum punishment"). *See also Blakely v. Washington*, 542 U.S. 296, 309, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004) (referring to "the jury's traditional function of

10

finding the facts essential to lawful imposition of the penalty"); *Apprendi*, 530 U.S. at 483, 120 S.Ct. 2348, 147 L.Ed.2d 435 (referring to "the basic principles undergirding the requirements of trying to a jury all facts necessary to constitute a statutory offense").

{¶ 26} Nearly every court that has considered the issue has held that the Sixth Amendment is applicable to only the fact-bound eligibility decision concerning an offender's guilt of the principal offense and any aggravating circumstances. *See United States v. Gabrion*, 719 F.3d 511, 532-533 (6th Cir.2013) (rehearing en banc); *United States v. Runyon*, 707 F.3d 475, 516 (4th Cir.2013); *United States v. Mitchell*, 502 F.3d 931, 993-994 (9th Cir.2007); *United States v. Sampson*, 486 F.3d 13, 31-32 (1st Cir.2007); *United States v. Fields*, 483 F.3d 313, 345-346 (5th Cir.2007); *United States v. Purkey*, 428 F.3d 738, 749 (8th Cir.2005); *Ritchie v. State*, 809 N.E.2d 258, 268 (Ind.2004); *Oken v. State*, 378 Md. 179, 251, 835 A.2d 1105 (2003); *Commonwealth v. Roney*, 581 Pa. 587, 601, 866 A.2d 351 (2005); *State v. Gales*, 265 Neb. 598, 628, 658 N.W.2d 604 (2003); *Nunnery v. State*, 127 Nev. 749, 770-775, 263 P.3d 235 (2011); *State v. Fry*, 2006-NMSC-001, ¶ 37-38, 138 N.M. 700, 126 P.3d 516.

{¶ 27} But some post-*Hurst* decisions have held otherwise. *See Smith v. Pineda*, S.D.Ohio No. 1:12-cv-196, 2017 U.S. Dist. LEXIS 22082, *6 (Feb. 16, 2017) (finding that Ohio's scheme satisfies the Sixth Amendment but also finding that "the relative weight of aggravating circumstances and mitigating factors is a question of fact akin to an element under the *Apprendi* line of cases"); *Chinn v. Jenkins*, S.D.Ohio No. 3:02-cv-512, 2017 U.S. Dist. LEXIS 22088, *5 (Feb. 13, 2017) (same); *Davis v. Bobby*, S.D.Ohio No. 2:10-cv-107, 2017 U.S. Dist. LEXIS 157948, *6-7 (Sept. 25, 2017); *Rauf v. State*, 145 A.3d 430, 434 (Del.2016).

{¶ 28} In *Gabrion*, the Sixth Circuit (analyzing the federal death-penalty statute) explained that the weighing process requires "not a finding of fact in support of a particular sentence * * * [but] a determination of *the sentence itself*, within a

range for which the defendant is already eligible." (Emphasis sic.) *Id.* at 533. This analysis is persuasive and applies to the Ohio scheme, which expressly makes the weighing process a determination of the sentence itself. *See* R.C. 2929.03(C)(2)(b) ("if the offender is found guilty of both the charge and one or more of the specifications, the penalty to be imposed on the offender * * * shall be determined * * * [b]y the trial jury and the trial judge, if the offender was tried by jury"). In other words, after completing its role as the fact-finder concerning a defendant's guilt, an Ohio jury assumes a different role as a "sentencer" (albeit in conjunction with the trial court). *See Brown v. Sanders*, 546 U.S. 212, 216, 126 S.Ct. 884, 163 L.Ed.2d 723 (2006) ("Once the narrowing requirement has been satisfied, the sentencer is called upon to determine whether a defendant thus found eligible for the death penalty should in fact receive it"). *But see State v. Rogers*, 28 Ohio St.3d 427, 429, 504 N.E.2d 52 (1986), *reversed on reconsideration on other grounds,* 32 Ohio St.3d 70, 512 N.E.2d 581 (1987) (recognizing the trial court as the ultimate "sentencing authority").

### b. Ohio's statutory scheme does not violate the Sixth Amendment

{¶ 29} Based on the above analysis, we were correct to state in *Belton*, 149 Ohio St.3d 165, 2016-Ohio-1581, 74 N.E.3d 319, at ¶ 60, that "[w]eighing is *not* a fact-finding process subject to the Sixth Amendment." (Emphasis sic.) The Sixth Amendment was satisfied once the jury found Mason guilty of aggravated murder and a felony-murder capital specification. *See State v. Adams*, 144 Ohio St.3d 429, 2015-Ohio-3954, 45 N.E.3d 127, ¶ 269 ("Adams became death-eligible when the jury unanimously found him guilty of aggravated murder in the course of some predicate felony"); *State v. Davis*, 116 Ohio St.3d 404, 2008-Ohio-2, 880 N.E.2d 31, ¶ 189 ("the jury's verdict, and not the judge's findings, made Davis eligible for the death penalty"); *State v. Gumm*, 73 Ohio St.3d 413, 417, 653 N.E.2d 253 (1995) ("At the point in time at which the factfinder * * * finds the defendant guilty of both aggravated murder and an R.C. 2929.04(A) specification, the defendant has become

'death-eligible,' and a second phase of the proceedings (the 'mitigation' or 'penalty' or 'sentencing' or 'selection' phase begins"). *See also Jenkins v. Hutton*, ___ U.S. ___, 137 S.Ct. 1769, 1772, 198 L.Ed.2d 415 (2017) (stating that Hutton was death-eligible under Ohio law when the jury found him guilty of aggravated murder and two aggravating circumstances). Accordingly, we approve our analysis in *Belton* and reject Mason's claim that Ohio's death-penalty scheme is unconstitutional under *Hurst*.

### 2. The Jury's Role in Sentencing

{¶ 30} While we uphold our conclusion in *Belton* that weighing is not a fact-finding process subject to the Sixth Amendment, we further conclude that even if the weighing process were to involve fact-finding under the Sixth Amendment, Ohio adequately affords the right to trial by jury during the penalty phase. Mason contends that it does not, because the process permits a jury only to *recommend* a death sentence. *See* R.C. 2929.03(D)(2). Here, he emphasizes the statement in *Hurst* that "[a] jury's mere recommendation is not enough." *Hurst*, ___ U.S. at ___, 136 S.Ct. at 619, 193 L.Ed.2d 504. But he fails to appreciate the material difference between the process by which an Ohio jury reaches its death recommendation and the Florida process at issue in *Hurst*.

{¶ 31} The Florida statute required the jury to render an "advisory sentence" after hearing the evidence presented in a sentencing-phase proceeding:

> Advisory sentence by the jury.—After hearing all the evidence, the jury shall deliberate and render an advisory sentence to the court, based upon the following matters:
>
> (a) Whether sufficient aggravating circumstances exist as enumerated in subsection (5);
>
> (b) Whether sufficient mitigating circumstances exist which outweigh the aggravating circumstances found to exist; and

> (c)  Based on these considerations, whether the defendant
> should be sentenced to life imprisonment or death.

Former Fla.Stat. 921.141(2).  In *Hurst*, the court held that the Florida scheme violated the Sixth Amendment because it did not require the jury to find that Hurst was guilty of committing a specific aggravating circumstance.  *Hurst* at ___, 136 S.Ct. at 622, 624.

**{¶ 32}** Ohio law, in contrast, requires a jury to find the defendant guilty beyond a reasonable doubt of at least one aggravating circumstance, R.C. 2929.03(B), before the matter proceeds to the penalty phase, when the jury can recommend a death sentence.  Ohio's scheme differs from Florida's because Ohio requires the jury to make this specific and critical finding.

**{¶ 33}** Mason disputes this conclusion, relying on this court's statement in *Rogers*, 28 Ohio St.3d at 430, 504 N.E.2d 52, that Florida's system "is remarkably similar to Ohio's."  But *Rogers* involved a different question.  *See id.* at 429-430. *Rogers* noted that the systems are similar in that they both allow for jury recommendations; it did not consider the findings that the jury was required to make before recommending a sentence.

**{¶ 34}** Mason also argues that Ohio's scheme is inadequate under the Sixth Amendment because it requires the jury to render "only a general verdict."  Here, Mason relies on *Hurst*'s reference to the " 'specific factual findings' " by a jury that were lacking under Florida's scheme.  *See Hurst*, ___ U.S. at ___, 136 S.Ct. at 622, 193 L.Ed.2d 504, quoting *Walton*, 497 U.S. at 648, 110 S.Ct. 3047, 111 L.Ed.2d 511.  He contends that this requires a jury to *explain why* it concluded that the aggravating circumstances are sufficient to outweigh the mitigating factors.  He contrasts the jury's general verdict to the trial court's sentencing opinion, which indeed must explain "the reasons why the aggravating circumstances the offender

was found guilty of committing were sufficient to outweigh the mitigating factors," R.C. 2929.03(F).

{¶ 35} While it is true that a trial court must fully explain its reasoning for imposing a sentence of death, Mason does not provide any support for the proposition that the Sixth Amendment requires *a jury* to explain why it found that the aggravating circumstances outweigh the mitigating factors. In citing *Hurst* for this proposition, Mason fails to appreciate that Florida's statutory scheme violated the Sixth Amendment because the jury did not specify its finding of which aggravating circumstance supported its recommendation, not because the jury did not explain why it found that the aggravating circumstances were not outweighed by sufficient mitigating circumstances.

{¶ 36} On a related point, Mason contends that the jury's sentencing-phase finding and recommendation are insufficient because they provide no guidance to the trial court for its own findings and sentence determination. His argument relies on the statement in *Hurst* that " '[a] Florida trial court no more has the assistance of a jury's findings of fact with respect to sentencing issues than does a trial judge in Arizona.' " *Hurst* at ___, 136 S.Ct. at 622, quoting *Walton* at 648.

{¶ 37} Mason misses a key distinction between Ohio's statutory scheme and the Florida and Arizona statutory schemes at issue in *Hurst* and *Walton*: in Ohio, a jury is required to find the defendant guilty of a specific aggravating circumstance, thus establishing the aggravating circumstance that a trial court will weigh against the mitigating factors in its independent determination of punishment. *See* R.C. 2929.03(D)(3); *State v. Wogenstahl*, 75 Ohio St.3d 344, 662 N.E.2d 311 (1996), paragraph one of the syllabus. Mason does not explain why further guidance for the trial court is constitutionally required.

{¶ 38} Mason also complains that Ohio's statutory scheme does not require the jury to make findings regarding mitigating factors or to specify the factors that it considered in mitigation. There is only limited support for the argument that a jury

must do so: *Hurst*, again quoting *Walton*, notes that Florida's former scheme did not require the jury to " 'make specific factual findings with regard to the existence of mitigating or aggravating circumstances.' " *Hurst*, ___ U.S. at ___, 136 S.Ct. at 622, 193 L.Ed.2d 504, quoting *Walton*, 497 U.S. at 648, 110 S.Ct. 3047, 111 L.Ed.2d 511. Notably, however, neither *Ring* nor *Hurst* held that the Sixth Amendment requires a jury to find mitigating facts. *See State v. Were*, 118 Ohio St.3d 448, 2008-Ohio-2762, 890 N.E.2d 263, ¶ 186. Rather, they recognized that the Sixth Amendment guarantees that a jury will determine the facts that serve to *increase* the maximum punishment. *Ring*, 536 U.S. at 589, 122 S.Ct. 2428, 153 L.Ed.2d 556; *Hurst* at ___, 136 S.Ct. at 619. *See also Apprendi*, 530 U.S. at 490-491, 120 S.Ct. 2348, 147 L.Ed.2d 435, fn. 16 (stating that "[c]ore concerns animating the jury and burden-of-proof requirements are thus absent" when a trial judge alone finds a mitigating fact that reduces an offender's sentence). Because a finding that mitigating facts exist is not "necessary to impose a sentence of death," *Hurst* at ___, 136 S.Ct. at 619, this aspect of Mason's claim has no merit.

### 3. The Trial Judge's Role and the Sixth Amendment

**{¶ 39}** One of Mason's main concerns is the last step in Ohio's capital-sentencing process: the trial judge's independent findings that culminate in a written sentencing opinion. *See* R.C. 2929.03(D)(3) and (F). He contends that the trial judge must "make additional 'specific findings' beyond those made by the trial jury" and that an offender is not eligible for the death penalty until this judicial task is complete. Relying on *Hurst*, he says that a death sentence can be imposed in Ohio only after the trial judge makes these "independent factual determinations." But Mason misapprehends the issue, framing it as a question whether a death sentence "can be imposed," instead of whether it "will be imposed." Ohio does not permit the trial judge to find *additional* aggravating facts but requires the judge to determine, independent of the jury, whether a sentence of death *should* be imposed. *See State v. Roberts*, 110 Ohio St.3d 71, 2006-Ohio-3665, 850 N.E.2d 1168, ¶ 160.

16

{¶ 40} Two significant flaws are apparent in Mason's claim. First, unlike the Arizona scheme found unconstitutional by the United States Supreme Court in *Ring*, under the Ohio scheme, the trial court cannot *increase* an offender's sentence based on its own findings. Rather, the trial court safeguards offenders from wayward juries, similar to how a court might grant a motion for acquittal following a jury verdict under Crim.R. 29(C).

{¶ 41} Second, Mason wrongly supposes that the Sixth Amendment prohibits judicial fact-finding. To be sure, *Hurst* and *Ring* both decry judicial fact-finding to some extent. But they do so in the context of reviewing statutory schemes that fail to provide for any *jury* fact-finding on critical questions. *See Hurst*, ___ U.S. at ___, 136 S.Ct. at 622, 193 L.Ed.2d 504, (noting "the central and *singular* role the judge play[ed] under Florida law" [emphasis added]); *Ring*, 536 U.S. at 592, 122 S.Ct. 2428, 153 L.Ed.2d 556 (noting that the court alone made the factual determination of an aggravating factor under Arizona law). The Supreme Court made clear in *Blakely*, 542 U.S. at 308, 124 S.Ct.2531, 159 L.Ed.2d 403, that "the Sixth Amendment by its terms is not a limitation on judicial power, but a reservation of jury power. It limits judicial power only to the extent that the claimed judicial power infringes on the province of the jury." *See also Alleyne v. United States*, 570 U.S. 99, 116, 133 S.Ct. 2151, 186 L.Ed.2d 314 (2013) ("Our ruling today does not mean that any fact that influences judicial discretion must be found by a jury. We have long recognized that broad sentencing discretion, informed by judicial factfinding, does not violate the Sixth Amendment"); *United States v. Booker*, 543 U.S. 220, 233, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005) ("We have never doubted the authority of a judge to exercise broad discretion in imposing a sentence within a statutory range").

{¶ 42} Mason suggests that under *Hurst*, the Sixth Amendment requires the jury alone to decide whether a sentence of death will be imposed. But *Hurst* did not create this requirement. Ohio trial judges may weigh aggravating circumstances

against mitigating factors and impose a death sentence only after the jury itself has made the critical findings and recommended that sentence. Thus, "the judge's authority to sentence derives wholly from the jury's verdict." *Blakely* at 306. Under Ohio's death-penalty scheme, therefore, trial judges function squarely within the framework of the Sixth Amendment.

### III. Conclusion

{¶ 43} We conclude that Ohio's death-penalty scheme does not violate a defendant's right to a trial by jury as guaranteed by the Sixth Amendment. For this reason, the trial court erred in granting Mason's motion to dismiss the death-penalty specification from his indictment. We accordingly affirm the decision of the Third District Court of Appeals.

Judgment affirmed.

O'CONNOR, C.J., and JENSEN, FRENCH, HALL, and DEWINE, JJ., concur.

KENNEDY, J., concurs, with an opinion.

JAMES D. JENSEN, J., of the Sixth District Court of Appeals, sitting for O'DONNELL, J.

MICHAEL T. HALL, J., of the Second District Court of Appeals, sitting for O'NEILL, J.

_____

**KENNEDY, J., concurring.**

{¶ 44} Because the majority's judgment is in line with our holding in *State v. Belton*, 149 Ohio St.3d 165, 2016-Ohio-1581, 74 N.E.3d 319, I concur in that judgment. Although the majority never explicitly addresses Mason's argument that the analysis of *Hurst v. Florida*, ___ U.S. ___, 136 S.Ct. 616, 193 L.Ed.2d 504 (2016), in *Belton* is dicta, its failure to cite *Belton* as binding precedent that resolves this case implies that the majority agrees that our holding in *Belton* is dictum.

{¶ 45} With regard to dicta, Chief Justice Marshall wrote the following almost 200 years ago in *Cohens v. Virginia*: "It is a maxim not to be disregarded,

that general expressions, in every opinion, are to be taken in connection with the case in which those expressions are used. If they go beyond the case, they may be respected, but ought not to control the judgment in a subsequent suit when the very point is presented for decision." 19 U.S. 264, 399, 5 L.Ed. 257 (1821). For this reason, a court is not bound to follow its own dicta from a prior case in which the point at issue "was not fully debated." *Cent. Virginia Community College v. Katz*, 546 U.S. 356, 363, 126 S.Ct. 990, 163 L.Ed.2d 945 (2006); *see also Cosgrove v. Williamsburg of Cincinnati Mgt. Co., Inc.*, 70 Ohio St.3d 281, 284, 638 N.E.2d 991 (1994) (explaining that dicta in a prior case had no binding effect on a court's decision in a later case).

{¶ 46} This is so because " '[t]he problem with dicta, and a good reason that it should not have the force of precedent for later cases, is that when a holding is unnecessary to the outcome of a case, it may be made with less care and thoroughness than if it were crucial to the outcome.' " *State v. Bodyke*, 126 Ohio St.3d 266, 2010-Ohio-2424, 933 N.E.2d 753, ¶ 89 (O'Donnell, J., concurring in part and dissenting in part), quoting *Bauer v. Garden City*, 163 Mich.App. 562, 571, 414 N.W.2d 891 (1987).

{¶ 47} Our determination in *Belton* that Ohio's death-penalty statutes do not contravene the holding in *Hurst*, however, is not dictum. The issue presented in the third proposition of law in *Belton* was whether Ohio's death-penalty statute violated the Sixth Amendment right to a jury trial. The court quoted Belton as asserting that

> "even if a capital defendant enters a guilty plea to Aggravated
> Murder and the accompanying death specifications, he has a right to
> a jury trial to determine the existence of any mitigating factors and
> to determine whether the aggravating circumstance or

circumstances to which he would plead guilty outweigh those factors by proof beyond a reasonable doubt."

*Belton*, 149 Ohio St.3d 165, 2016-Ohio-1581, 74 N.E.3d 319, at ¶ 55. In effect, Belton argued that the Sixth Amendment guarantees a capital defendant the right to have a jury make additional factual determinations before sentencing—that notwithstanding his having waived the right to have a jury determine guilt, only a jury can make the finding that the aggravating circumstances outweighed the mitigating factors. The court answered the question squarely presented by the parties by applying *Hurst*—then the United States Supreme Court's most recent pronouncement on the issue—and explaining that the Sixth Amendment right to a jury trial is not implicated by a sentencing scheme that requires the trial judge to weigh aggravating circumstances against mitigating factors before selecting death as the appropriate sentence.

**{¶ 48}** The fact that the court could have analyzed the question presented in a different way—for instance, by considering whether Belton's waiver of a jury trial relinquished any right to a jury's participation in sentencing—does not mean that the way we did answer it is dicta. In *Richards v. Mkt. Exchange Bank Co.*, 81 Ohio St. 348, 367, 90 N.E. 1000 (1910), we rejected the view that "the determination of a question fairly presented by the record becomes mere dicta if there happens to be another proposition on which the decision might have been based."

**{¶ 49}** That a case could be distinguished on some factual basis from another case does not affect the authority of the rule of law it announced or reduce its holding to mere dictum. *See United States v. Schuster*, 684 F.2d 744, 748 (11th Cir.1982), *adopted on reh'g*, 717 F.2d 537 (11th Cir.1983) (en banc) ("Virtually all cases are factually distinguishable, but that does not vitiate the underlying rule of law to be derived from [a prior decision]"); *State v. Rice*, 169 N.H. 783, 795, 159

20

A.3d 1250 (2017) (acknowledging that the case was distinguishable from a prior case on the facts, but concluding that the "factual distinction" did not "justif[y] a difference in outcome"). Our decision in *Belton* is binding precedent controlling the outcome of this appeal, because its holding did not go beyond the facts and issues then before the court and its analysis was necessary for our ruling. Therefore, it is not dictum.

{¶ 50} Applying *Belton*, 149 Ohio St.3d 165, 2016-Ohio-1581, 74 N.E.3d 319, I agree that Ohio's death-penalty statutes do not violate the Sixth Amendment right to a jury trial as construed by *Hurst*, __ U.S. ___, 136 S.Ct. 616, 193 L.Ed.2d 504. As we explained in *Belton*, the weighing of aggravating circumstances and mitigating factors required to ensure that only a defendant deserving of the ultimate penalty is sentenced to death "is *not* a fact-finding process subject to the Sixth Amendment" (emphasis sic), *id*. at ¶ 60, but rather "amounts to 'a complex moral judgment' about what penalty to impose upon a defendant who is already death-penalty eligible," *id*., quoting *United States v. Runyon,* 707 F.3d 475, 515-516 (4th Cir.2013).

{¶ 51} Once the jury found Mason guilty of aggravated murder and at least one aggravating circumstance, under former R.C. 2929.03(C)(2), Am.Sub.S.B. No. 1, 139 Ohio Laws, Part I, 1, 10, the court could impose only one of the following penalties: "death, life imprisonment with parole eligibility after serving twenty full years of imprisonment, or life imprisonment with parole eligibility after serving thirty full years of imprisonment." Therefore, the maximum penalty authorized by the statute following the jury's verdict at the trial phase was death, and no judicial fact-finding could expose Mason to any greater punishment.

{¶ 52} Because Mason was eligible for capital punishment based on the jury's verdict at the end of the trial phase, his argument that Ohio's death-penalty scheme violates the Sixth Amendment because it does not require the jury to make specific findings of fact regarding the mitigating circumstances or why the

mitigating circumstances were outweighed by the aggravating circumstances is not well taken. Accordingly, the majority correctly affirms the judgment of the court of appeals, and I concur.

_____

Ray A. Grogan, Marion County Prosecuting Attorney, and Kevin P. Collins, Assistant Prosecuting Attorney, for appellee.

Carpenter, Lipps & Leland, L.L.P., and Kort Gatterdam; and Todd Anderson, for appellant.

Michael DeWine, Attorney General, Eric E. Murphy, State Solicitor, and Michael J. Hendershot, Chief Deputy Solicitor, urging affirmance for amicus curiae Ohio Attorney General.

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, and Christopher D. Schroeder, Assistant Prosecuting Attorney, urging affirmance for amicus curiae Cuyahoga County Prosecutor's Office.

Ron O'Brien, Franklin County Prosecuting Attorney, and Steven L. Taylor, Assistant Prosecuting Attorney, urging affirmance for amicus curiae Ohio Prosecuting Attorneys Association.

Jeffrey M. Gamso and Erika B. Cunliffe, urging reversal for amicus curiae Ohio Association of Criminal Defense Lawyers.

_____